Richards, J.
This action was commenced for the purpose of recovering damages by reason of the death of Philip W. Hasselbach, who was an engineer in the employment of the defendant company, and is claimed to have lost his life by reason of its negligence. The trial resulted in a verdict and judgment in favor of the plaintiff for $16,500 and it is insisted that this judgment should be reversed because of errors in the admission of evidence and 'in the charge of the court, and because the verdict is not sustained by sufficient evidence and the amount of damages awarded is excessive.
The decedent lost his life in a collision which occurred in Fort Wayne, Indiana, on the evening of February 23, 19-16. On that occasion 'he was running an engine attached to a freight train east on the main track, and had just come from the west Fort Wayne yards, proceeding on his w-ay toward Bellevue. In the easterly part of the city a switch track, known as the south track, connects ■with the main track, and’on this south track, just before the collision, a passenger engine to which was attached a baggage car was proceeding slowly east, the rate of speed being not. more than two or three miles an hour. On the rear platform of this baggage car was a red light. The freight train attached to Hasselbach’s engine was going at a rate of speed which is said by witnesses for the plaintiff to have been eight to ten miles an hour, and by witnesses for the defendant to have been about twenty miles per hour. The railroad company used automatic block signals through its yards and along its tracks in the city of Fort *197 Wayne, and these signals indicated that the freight train on the main track had the right of way. Under these 'circumstances the employes operating the passenger engine on the south track ran their engine far enough into the switch so that it fouled the main track. As it did so the employe known as the pilot, who was on that engine, alighted and walked over to the main track for the purpose of throwing the switch, so that the passenger engine might proceed on to the main track. As he stepped on to the main track he discovered the approach of the train from the west, which was the freight train attached to the engine operated by Hasselbach. He immediately flagged that train and gave warning to the employes on the passenger engine. Hasselbach at once 'applied the emergency air brakes, and the engineer on the passenger engine attempted to back his engine so as to get beyond the fouling point, but these efforts were not sufficient to prevent a collision, resulting in the death of Hasselbach and also the engineer operating the passenger engine.
It is conceded that the defendant company and the decedent, Philip W. Hasselbach, were at the time of the collision engaged in interstate commerce. •
On the trial of the case the plaintiff introduced in evidence Rule 99 adopted by the company, providing, in substance, that where a train stops or is delayed under circumstances in which it ma3" be overtaken by another train, the flagman must go back immediately with danger signals. This rule was received in evidence over the objection and exception of the company, the contention being *198 that it had no application to the facts of this case. We are not able to see that this rule was competent evidence in the trial of the case. The pilot immediately upon alighting -and getting onto the main track discovered the approach of the freight train from the west, so that it was impossible to comply with that rule if applicable, and the omission to comply with the rule, under these circumstances, was not the cause of the collision. The negligent act of the company consisted in fouling the main track with one of its engines while a freight train on that track having the right of way was approaching within a very short distance and too near to 'avoid a collision. The rule referred to could not be intended to apply to a case where an engine was stopped momentarily for the purpose only of throwing a switch to enable it to proceed. Oral evidence was offered on this same subject and received over the objection and exception of the railroad company. The rule and the oral evidence relating thereto were not competent evidence and should not have been received. It does not follow, however, that the reception of the evidence, while erroneous, was so prejudicial as to require a reversal of the judgment. We are not able to see how either the rule or the oral evidence prejudiced the rights of the railroad company. Whether the rule was obeyed or disobeyed, under the circumstances disclosed the collision would, have happened, the proximate cause being, undoubtedly, the fact that the employes operating the passenger engine h'ad- driven the same so far that it fouled the main track, and without exercising ordinary care to see that no train was approaching, *199 and while the signals indicated that the main track was clear for the freight train being drawn by Hasselbach’s engine.
The facts shown by the record are not in very serious conflict and they establish the negligent conduct of the defendant company beyond question. It is urged that the decedent, Hasselbaeh, was guilty of contributory negligence in failing to observe and heed the red light on the rear of the baggage car on the south track, and in operating, his train in violation of the rule set forth in exhibit number two. That rule requires that second-class and inferior trains and yard engines in either direction between west Fort Wayne yard and the east end of Oliver House switch must move with great care, expecting to find passenger or switch engines occupying the main track, and shall run at such speed that the train can be stopped where necessary. This latter rule was undoubtedly applicable to the train being drawn by Hasselbach’s engine. It will not, however, do to interpret the rule so rigidly -as to require that he should operate his engine so as to be able to instantly stop the same. The rule must have a reasonable construction in view of what is practicable in the ordinary conduct of a railroad. If the jury believed the testimony offered by the plaintiff as to the speed a't which the freight train was proceeding, which was, according to witnesses called by the plaintiff, eight to ten miles an hour, they would be justified in finding that the engineer was not violating the rule. A majority of the court are of the opinion that even if the speed had been as shown by the evidence of the defendant’s wit *200 nesses, to-wit, twenty miles an hour, the jury would still have been justified in finding, if they had seen fit to do so, that Hasselbach was not guilty of contributory negligence under all the facts shown in this case.
The main track at the place where the collision occurred is on a curve and there is some doubt whether the red light on the rear of the baggage car would be visible to Hasselbach. Even if he saw the same moving slowly eastward, he would have been justified in assuming, in view of the fact that his train had the right of way on the main track, that the employes operating the engine hauling the car to which was attached the red light would not proceed so far as to interfere with the freight train. The existence of the red light, therefore, does not, in the judgment of the court, justify a finding of contributory negligence on the part of Hasselbach.
Exception was taken to the action of the trial judge in charging the jury, at the request of the plaintiff, before argument, that they could take into consideration the care, attention, instruction, training, advice and guidance, if any, which the evidence shows Hasselbach reasonably might have been expected to give his children during their minority, and include the pecuniary value thereof in the damages assessed, if any. We find no error of the court in giving that instruction. Training, advice and guidance may reasonably have a pecuniary value and may therefore be taken into consideration in determining the amount of damages to be awarded. Almost the identical language is used by Mr. Justice McReynolds in delivering *201 the opinion of the supreme court of the United States in the case of N. & W. Ry. Co. v. Holbrook, Admx., 235 U. S., 625.
In charging the jury on the subject of comparative negligence the trial judge read the section of the Federal Employer’s Liability Act governing this case and instructed them that contributory negligence, if found to exist, would not defeat or bar a recovery altogether, but that the damages should be diminished by the jury in proportion to the amount of negligence attributable to Hasselbach. This charge was in accordance with the rule fixed by the statute just mentioned and is substantially in accordance with instructions approved in N. & W. Ry. Co. v. Earnest, 229 U. S., 114; Seaboard Air Line Railway v. Tilghman, 237 U. S., 499, and Illinois Central Rd. Co. v. Skaggs, 240 U. S., 66. The true rule is summarized in the following language in 18 Ruling Case Law, 829:
“Under the statute it is not a question of majority of negligence, but rather one of proportion; and the damages are to be diminished in proportion to the amount of negligence attributed to the negligent employee as compared with the combined negligence of him and the employer. Or, as has been said by the supreme court, the damage recoverable bear ‘the same relation to the full amount as the negligence attributable to the carrier bears to the entire negligence attributable to both.’ ”
In applying, however, the language used in the above passage from Ruling Case Law it must be remembered thal the words“negligent employee” *202 used therein refer to the employee who is injured, or killed.
The trial judge instructed the jury on the subject of contributory negligence, that, where the inference of contributory negligence did not arise from evidence offered by the plaintiff, the burden rested on the defendant to show the same by a preponderance of the evidence, “or by evidence which equals in weight that offered by the plaintiff.” Under the circumstances stated the burden would rest on the defendant to establish contributory negligence by a preponderance of the evidence, and it would not strictly be done by evidence which only equaled in weight that offered by the plaintiff. This error, however, could not in any sense be prejudicial to the railroad company.
We find no error in the charge to the prejudice of the defendant.
Counsel for - the railroad company strenuously insist that the verdict of $16,500 rendered in this case is excessive and wholly unwarranted by the evidence. Clearly the plaintiff was not entitled to recover more than the pecuniary loss which was suffered by the next of kin, consisting of the widow and two children, aged ten and seven. The trial judge was careful to instruct the jury to limit the damages awarded to this pecuniary loss.
Philip W. Hasselbach was thirty-seven years of age and in good health, but had no means except what was derived from his earnings, amounting to about $1,800 per year. He and his wife had separated some months before the fatal injury and had continued to live apart, and he had commenced *203 an action to obtain a divorce from her. During that separation he made no provision, so far as the record shows, for the support of his wife or children, except that there was some money in bank which she used. No payments were made by him for the maintenance of his family after this separation until he was threatened with an application for the allowance of temporary alimony, and thereafter he paid fifty dollars per month as temporary alimony. The record-justifies the inference that this divorce case was pending at the time of his death and that the separation still continued. This evidence -creates a situation that is very important in determining the pecuniary loss suffered by the next of kin by reason of the death of Philip W. Hasselbach. Certainly, with the litigation pending, it could not have been expected that he would pay more toward the support and maintenance of his family than should be required by the court, and his family could not justly anticipate any larger sum than should be so fixed; whereas if the husband had continued to reside with his family, and the relations were affectionate, they would undoubtedly have received greater pecuniary support and such considerate and parental advice and guidance as 'have pecuniary value. This unfortunate -condition existing in the family was not called to the attention of the jury in the charge, nor were its bearings explained. We are forced to the conclusion, in view of the facts just recited, that the verdict is for -a greater sum than represents the actual pecuniary loss sustained. by the next of kin by reason of the death of Hasselbach. *204 We find nothing in the record which would indicate that the result reached by the jury was based in any sense on passion or prejudice, but rather that they failed to take into consideration, in assessing the pecuniary loss suffered by the next of kin, the domestic infelicity existing in the family and to make due allowance therefor.
In view of this state of the record this court is of opinion that the verdict is excessive and that the defendant in error ought to be given an opportunity to remit from the verdict all in excess of the sum of $12,000, as of the date of the rendition of the verdict. Were it not for the feature of the case just mentioned, the verdict and judgment as returned and rendered would be affirmed by unanimous vote of this court.
Counsel for defendant in error cite a number of cases where judgments for greater sums than that awarded in this case have been sustained in actions brought to recover damages for death by wrongful act. An examination of those cases, however, discloses that they were not cases in which the comparative negligence doctrine was involved, nor were they cases in which there was a failure to take' into consideration a class of evidence that would have tended to reduce the amount of damages awarded.
We have examined all the errors on which reliance is placed, but find no others justifying separate mention.
If the defendant in error will consent to the remittitur as already stated, the judgment will be modified accordingly, and, as so modified, will be *205 affirmed; otherwise it will be reversed and the cause remanded for new trial.

Judgment accordingly.

Chittenden and Kinkade, JJ., concur.