### Brenneman v. Kurtz
### Case No. CA-7911
### Stark County (5th)
### Decided February 12, 1990
[Cite as 1 AOA 181]

*For Plaintiffs-Appellees, John W. Ergazos, 552 Citizens Savings Bldg., Canton, Ohio 44702*

*For Defendants-Appellants, John D. Morris, 1620 South Union Avenue, P.O. Box 2566, Alliance, Ohio 44601.*

SMART, J.
### EASEMENT FOR
### DRIVEWAY-REFORMATION

The Stark County Common Pleas Court, sitting without a jury in 1989, ordered reformation of a 1973 driveway agreement in common, Volume 3678, p. 762, Stark County Deed Records.

An affected landowner appeals, assigning a single error:

> THE COURT IS WITHOUT AUTHORITY TO REFORM A CONTRACT WHEN THE PARTY SEEKING REFORMATION 1) FAILS TO PROVE MUTUALITY OF MISTAKE 2) THE AGREEMENT SPECIFICALLY SETS THE TERMS SOUGHT REFORMED AND 3) THE REFORMATION WOULD DAMAGE A BONA FIDE PURCHASER FOR VALUE.

On April 4, 1973, Clair D. Besse and Karen S. Besse executed a common driveway agreement with Albert A. and Mary E. Crookston, appellees-Brennemans' predecessor in title. Joint Exh. 3.

The easement commences at the center line of Smith Kramer Street Northeast, and is locatable by metes and bounds. From said beginning point, the easement is described as follows:

> ...[S]aid easement area to be 10 foot on each side of the following described centerline; thence in a northerly direction to a point on the northerly property line of property presently owned by Clair D. Besse and Karen S. Besse which is also the southeasterly line of property owned by Albert A. Crookston and Mary E. Crookston, said point being 371.00 feet east of the east right-of-way line of the Norfolk & Western Railroad.

After providing for mutual maintenance responsibilities, the recorded agreement provides:

> That neither party will obstruct, or permit obstruction, of said driveway in any manner whatsoever; And if said driveway is ever relocated each of the parties hereto their heirs and assigns agree that they will permit the other party to use said driveway under the terms and conditions herein set out and they further agree that they will execute and deliver a new easement containing the description of the relocated driveway with the same terms and conditions as herein incorporated;
> And that the conveyances and covenants herein contained shall be binding upon and shall inure to the benefit of the heirs and assigns of the parties hereto.

The chronology of transfers:
1) Prior to 1973, Besses owned the entire dominant and servient estate.
2) On February 7, 1973, Besses sold the

northernmost tract to Crookstons, 4.693 acres. Vol. 3669, p. 15.

3) On April 4, 1973, Besses and Crookstons executed a driveway easement and agreement, the object of this litigation.

4) The chain of title to the northern 4.693 acres passed from Crookstons to Footes to appellees, Brennemans, subject to the drive easement.

5) The chain of title to the 3.02 acre tract immediately south of the 4.693 acres ran from Besses to Crookstons (April 19, 1975), to appellants Kurtz (Nov. 4, 1982), subject to the drive easement.

6) Others also have an interest in use of the easement.

Currently, as a result of conveyances subject to the driveway easement, Stalnakers, Bennetts, Millers, Brennemans, and Kurtz are beneficiaries of and use the driveway easement for property access.

As constructed and continually used since 1973, the gravel driveway veers to the west of the described center line at a point about 1/2 its total distance north of Smith Kramer Road.

In its memorandum, the trial court found that the drive in its present location serves all five properties; without the driveway the Brenneman property would be landlocked (except for a 20 foot strip southeast running to Smith Kramer Street which is unimproved and which would cost approximately $12,000.00 to develop into a driveway); the Kurtz property could also be landlocked but for the driveway; no improvements have been constructed on the Kurtz property; existing driveways branch off from the existing driveway; appellants Kurtz never objected to the actual location of the drive until filing the suit, and used the existing driveway in common with all parties; all parties but Kurtz agreed to execute a new easement containing a description of the "relocated driveway."

Referencing the provision for "relocated driveway" in the original agreement, the court found such language persuasive that the parties "intended that the actual path of the driveway would be subject to change depending upon changing circumstances having to do with the need for a 'common' driveway which would accommodate all parties having future interests in the driveway."

The court granted reformation and ordered the easement amended to conform to a description consistent with the present extant driveway.

From an examination of Exhibit "A", it is clear that the only property significantly impacted by the difference between the extant driveway and the literal legal description is Kurtz. As to his property, the driveway line, which by the 1973 description, would run along the east line of his property, bisects his property diagonally from the south to the north, exiting his property at a point approximately 1/4 of its total distance away or west of the described line. (A triangular piece of ground is thus created on the east side of the extant drive measuring approximately 150 feet on its north boundary and 400 feet on its east boundary.)

The entire Kurtz property is currently vacant.

The trial court found its conclusion allowing reformation to be consistent with *Castle v. Daniels* (1984), 16 Ohio App. 3d 209, 475 N.E. 2d 149.

. . . [W]here an action in reformation is commenced, credible testimony concerning the conduct of the parties, any course of dealing between them, and the method of handling the specific transaction in question are entitled to great weight in determining the ultimate facts; to wit, the agreement.

The trial court committed no error in finding that the appellees had met their burden of proving mutual mistake by clear and convincing evidence. Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the weight of the evidence. *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St. 2d 279, 376 N.E. 2d 578 [8 O.O.3d 261].
*Castle, supra.*

The outcome reached by the trial court results in the "reformation" of an instrument that is clear and unambiguous on its face, and worse, deprives the owners of the subservient estate, appellants Kurtz, of the full use and enjoyment of their property. The fact that this property is vacant at the present time is irrelevant; the trial court may have ensured that it remain so by cutting a swath diagonally across the property and rendering it less useful for building purposes. This result is also against public policy.

for building purposes. This result is also against public policy.

The trial court's opinion characterizes the deed in question as ambiguous. However, when a deed contains language that specifically locates the placement of an easement, that language controls and the deed is not ambiguous, *Alban v. R.K. Co.* (1967), 10 Ohio App. 2d 205, syllabus para. 4 and 5 by the court. Once the location of an easement has been definitely set, the location cannot be changed without the consent of all parties involved, *Hollosy v. Gershkowitz* (1950), 10 Ohio App. 198.

Implied easements, or easements by necessity, are not favored in law because they are in derogation of the rule that "written instruments shall speak for themselves," *Ciski v. Wentworth* (1930), 122 Ohio St. 487, syllabus para. 1. Because easements of necessity are implied in law to provide a right-of-way over land which *could* have been accomplished by express grant but was *not* so accomplished, one cannot simultaneously have both an express grant and an implied grant, *Tiller v. Hinton* (1985), 19 Ohio St. 3d 66, at 69, citations omitted. This is exactly what the trial court did: it found that there was an express grant of easement in a specific location, and an implied grant in the language that appears to allow the easement to be moved at the whim of the parties. We must conclude that the specific description in the deed controls the location of the easement, and the language pointed to by the trial court as creating the ambiguity is meaningless under the law in the State of Ohio.

Because the actual driveway has not been in its present location for 21 years, this deed may not be reformed based upon the principles of adverse possession.

The assignment of error is sustained.

For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is reversed, and this cause is remanded to that court for further proceedings in accord with applicable law.

HOFFMAN, J. concurs.

MILLIGAN, J., dissents:

. . .[W]here an action in reformation is commenced, credible testimony concerning the conduct of the parties, any course of dealing between them, and the method of handling the specific transaction in question are entitled to great weight in determining the ultimate facts; to wit, the agreement.

The trial court committed no error in finding that the appellees had met their burden of proving mutual mistake by clear and convincing evidence. Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the weight of the evidence. *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St. 2d 279, 376 N.E. 2d 578 [8 O.O.3d 261]. *Castle, supra.*

The logic and rationale in *Castle* apply with equal force in the case *sub judice.*

Additionally, the specific insertion of the relocation provision in the original easement manifests an intent to accomplish by agreement what the trial court was required to do by judicial fiat.

The judgment of the Stark County Common Pleas Court is not contrary to law as suggested by the assignment of error.

The assignment of error should be overruled and the judgment of the Stark County Common Pleas Court affirmed.