This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Robert P. Miller, in his individual capacity and as administrator of the Estate of Debra J. Miller, appeals the decision of the Summit County Court of Common Pleas, granting summary judgment in favor of Ruhlin Construction, Inc., appellee. We affirm.
In November 1997, Ruhlin Construction, Inc. ("Ruhlin") was engaged in a construction project on the Ohio Turnpike. On November 5, 1997, Debra Miller, an employee of Ruhlin, was flagging traffic on the west side of the turnpike, while Roy Burke, another Ruhlin employee, was flagging traffic on the east side. At some point, Ms. Miller asked Mr. Burke whether she could change positions with him because at that point, the flagger on the west side became required to ride on the back of a truck and pick up traffic cones. As Ms. Miller was not feeling well, Mr. Burke agreed to change positions with her, and she began flagging traffic on the east side. While Ms. Miller was flagging traffic on the east side of the turnpike, she was crushed by a large piece of construction equipment, called the Badger 888 ("Badger"). Ms. Miller died from her injuries, leaving behind two children and her husband, Robert Miller.
The Badger had two cabs from which the Badger could be operated, the carrier cab and the working cab. The carrier cab generally is used when the Badger is being driven from one job site to another, while the working cab is used when the Badger is actually performing the construction work. There was a separate backup alarm associated with each cab. The backup alarm for the working cab was functioning properly on November 5, 1997; however, the backup alarm for the carrier cab was not working that day. On November 5, 1997, Larry Weimer, a Ruhlin employee, was operating the Badger. Bill Ertle, Ruhlin's construction superintendent, instructed Mr. Weimer to drive the Badger to a different location. At that time, Ms. Miller was flagging traffic on the east side of the turnpike and was standing somewhere behind the Badger. Mr. Weimer moved from the working cab to the carrier cab to comply with Mr. Ertle's instruction, checked behind him to see if anyone was there, saw nothing, and began to backup the Badger. After traveling a short distance, he felt the machine hit something and went to investigate. He discovered Ms. Miller under the wheels of the Badger.
As a result of the accident, Mr. Miller, in his individual capacity and as administrator of the Estate of Debra Miller, filed a complaint in the Summit County Court of Common Pleas, alleging an employer intentional tort claim against Ruhlin.[1] After substantial discovery, Ruhlin moved for summary judgment on April 19, 2000, and Mr. Miller responded in opposition. On June 6, 2000, the trial court granted summary judgment in favor of Ruhlin, finding "no dispute as to any material fact as it relates to the issue of whether Ruhlin, under these circumstances, required Ms. Miller to perform her job as a flagger in close proximity to the [Badger] knowing with substantial certainty that she would be injured thereby." This appeal followed.
Mr. Miller asserts a single assignment of error:
 THE TRIAL COURT ERRED IN GRANTING DEFENDANT/APPELLEE'S MOTION FOR SUMMARY JUDGMENT.
Mr. Miller avers that the trial court erred in granting Ruhlin's motion for summary judgment, as there was a genuine issue of material fact regarding each element of his intentional tort claim. We disagree.
Pursuant to Civ.R. 56(C), summary judgment is proper if:
 (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.
Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327. Appellate review of a lower court's entry of summary judgment is de novo, applying the same standard used by the trial court. McKay v. Cutlip (1992),80 Ohio App.3d 487, 491. The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the nonmoving party's claims. Dresher v. Burt (1996), 75 Ohio St.3d 280,293. The movant must point to some evidence in the record of the type listed in Civ.R. 56(C) in support of his motion. Id. Once this burden is satisfied, the nonmoving party has the burden, as set forth in Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Id. The nonmoving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that shows a genuine dispute over the material facts exists.Henkle v. Henkle (1991), 75 Ohio App.3d 732, 735. Specifically, "`in an action by an employee against his employer alleging an intentional tort, upon motion for summary judgment by the defendant employer, the plaintiff employee must set forth specific facts which show that there is a genuine issue of whether the employer had committed an intentional tort against his employee.'" Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115, 119, quoting Van Fossen v. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100, at paragraph seven of the syllabus.
In order to establish a prima facie case within the common law meaning of an intentional tort by an employer, an employee must demonstrate each of the following:
 (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation;
 (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and
 (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.
Fyffe, 59 Ohio St.3d at paragraph one of the syllabus. Moreover, "[t]o establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established." Id. at paragraph two of the syllabus. The Fyffe court further explained by stating:
 Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk something short of substantial certainty — is not intent.
Id; see, also, Van Fossen, 36 Ohio St.3d at 117. It is the element of substantial certainty which distinguishes a merely negligent act from intentionally tortious conduct. Van Fossen, 36 Ohio St.3d at 116.
The distinction between negligence, recklessness and substantial certainty is a matter of degree. Id. at 115. The line must be drawn where "`the known danger ceases to be only a foreseeable risk which a reasonable person would avoid, and becomes in the mind of the actor a substantial certainty.'" Id., quoting Prosser Keeton, Law of Torts (5 Ed. 1984) 36, Section 8.
In determining intent, this court proceeds on a case-by-case analysis and considers the totality of the circumstances. Church v. Rondy Co.,Inc. (June 11, 1997), Summit App. No. 18037, unreported, at 7. Some of the relevant facts and circumstances which support the conclusion that an employer's knowledge that harm to the employee was substantially certain include, but are not limited to, prior accidents of a similar nature, the employer's concealment or misrepresentations concerning the danger, and federal and/or state safety violations or noncompliance by the employer with industry safety standards. Id. at 7-8.
Assuming, without deciding, that Mr. Miller was able to successfully show that there were questions of material fact regarding the first and third elements of the Fyffe test, Mr. Miller cannot show that Ruhlin knew there was a substantial certainty of harm to Ms. Miller. Ruhlin satisfied its Dresher burden by presenting evidence that a tragedy of this type had never occurred with the Badger prior to Ms. Miller's death and that the problem with the backup alarm was not known to any of its employees until after the accident. As Ruhlin satisfied its burden underDresher, it became incumbent upon Mr. Miller to demonstrate that there was a genuine issue of material fact as to the second prong of the Fyffe
test.
To satisfy his burden, Mr. Miller presented evidence, which demonstrated that on October 17, 1997, nineteen days before the accident, Rob Lowe, a Ruhlin mechanic, did repair work on the rear fender of the Badger. Mr. Lowe testified in his deposition that he had reconnected the wires to the backup alarm after completing the repairs. After the accident, however, an inspection of the Badger was conducted, which revealed that the backup alarm wiring was disconnected. When the wiring was reconnected, the backup alarm for the carrier cab functioned properly.
Mr. Miller also presented a letter written by Matthew Cloutier, a Badger Equipment Company employee, who had met with Jeffrey Peecook, Ruhlin's safety director, after the accident. In the letter, Mr. Cloutier related that "Mr. Peecook stated that the travel alarm was not reconnected [after the fender repair work on October 17, 1997]." During his deposition, Mr. Peecook denied having any knowledge that the alarm was not reconnected on October 17, 1997. Mr. Miller also presented evidence that Bill Ertle, Ruhlin's construction superintendent, told troopers from the Ohio State Highway Patrol that the Badger operator was in the working cab — the cab which had the operational backup alarm — when the accident happened. Mr. Miller alleges that these facts demonstrate that Ruhlin was attempting to conceal how the accident occurred, and therefore, that Ruhlin had knowledge that the harm to Ms. Miller was substantially certain to occur.
In addition, Mr. Miller points to various OSHA citations, which were issued after the accident at issue. Mr. Miller further directs our attention to Mr. Peecook's deposition in which he acknowledged that it is dangerous to operate a Badger without a backup alarm because there is no warning to individuals within the vicinity of the Badger. Mr. Peecook also admitted that with each passing day that the Badger did not have a backup alarm, there was a greater chance of harm to employees. Mr. Miller argues that the above evidence created a genuine issue of material fact as to whether Ruhlin knew with substantial certainty that Ms. Miller would be harmed under the circumstances, and therefore, the trial court erred in granting summary judgment in Ruhlin's favor.
Lastly, Mr. Miller argues that the trial court failed to consider the affidavit and deposition testimony of his engineering expert, Richard Harkness. Mr. Harkness, testified that in his opinion, Ruhlin knew with substantial certainty that harm to Ms. Miller would occur due to the disengaged backup alarm on the Badger. Mr. Harkness based his opinion on deposition testimony and other evidence. Mr. Miller has argued that the Harkness affidavit and Mr. Harkness' deposition testimony established a genuine issue of material fact for trial. Mr. Harkness' opinion, however, is a legal conclusion, not a factual statement, and therefore, did not create an issue of fact for the jury. See Hackathorn v. Preisse
(1995), 104 Ohio App.3d 768, 772.
In the case sub judice, the evidence, construed most strongly in Mr. Miller's favor, indicates that Ruhlin's actions may rise to the level of negligence or even recklessness; however, evidence of negligence or recklessness is not enough to establish intent for the purposes of an intentional tort. See Fyffe, 59 Ohio St.3d at paragraph two of the syllabus. Furthermore, even though Ruhlin employees acknowledged that operating a Badger without a backup alarm is dangerous and could lead to injury, the mere knowledge and appreciation of a risk is not intent. SeeVan Fossen, 36 Ohio St.3d at 117. Consequently, we conclude that in construing the evidence in a light most favorable to Mr. Miller, reasonable minds could not differ concerning whether, under the circumstances, Ruhlin knew with substantial certainty that the harm suffered by Ms. Miller would occur; therefore, we hold that the trial court properly granted summary judgment in favor of Ruhlin.[2]
Mr. Miller's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellants.
Exceptions.
WILLIAM G. BATCHELDER, BAIRD, J., WHITMORE, J. CONCUR.
[1] Mr. Miller also brought suit against Badger Equipment, Inc. and Joseph Pollak Corporation. Mr. Miller, however, voluntarily dismissed those defendants, pursuant to Civ.R. 41(A), on March 1, 2000.
[2] Mr. Miller challenges the constitutionality of the trial court's decision. He argues that affirming the summary judgment of the trial court will contradict the public policy of holding employers accountable for their intentional torts, thereby allowing employers to commit intentional acts with impunity. As discussed above, the trial court properly granted summary judgment in favor of Ruhlin. Although Ruhlin's practices and acts may have risen to the level of recklessness, they did not meet the requirements for an intentional tort, and therefore, affirming the trial court's grant of summary judgment does not contradict the public policy of holding employers accountable for their intentional torts. Without further explanation, Mr. Miller also argues that the trial court misapplied the summary judgment standard, and therefore, violated his right to due process, right to seek redress for grievances, right to seek damages for wrongful death, and right to a jury trial. We, however, find no error in the trial court's application of the summary judgment standard. Hence, this portion of Mr. Miller's assignment of error is overruled.