This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Norma Marks, has appealed from a judgment of the Summit County Court of Common Pleas that granted summary judgment in favor of Appellee, Goodwill Industries of Akron, Ohio, Inc. This Court affirms.
Appellant was an employee of Appellee, and was trained to work both in the back room area, where donated goods were collected and stored, and on the sales floor. Appellant sustained two separate injuries while working in the back room for Appellee. Appellant filed suit against Appellee, alleging that she suffered permanent physical injuries from both incidents as a result of Appellee's intentionally tortious conduct. Appellee moved for summary judgment, and the trial court granted summary judgment in favor of Appellee on Appellant's intentional tort claim. Appellant has timely appealed, asserting one assignment of error.
 ASSIGNMENT OF ERROR The trial court erred in granting [Appellee's] motion for summary judgment on [Appellant's] intentional tort claim.
Pursuant to Civ.R. 56(C), summary judgment is proper if:
 (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.
Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327. Appellate review of a lower court's entry of summary judgment is de novo, applying the same standard used by the trial court. McKay v. Cutlip (1992),80 Ohio App.3d 487, 491. The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the nonmoving party's claims. Dresher v. Burt (1996), 75 Ohio St.3d 280,293. The movant must point to some evidence in the record of the type listed in Civ.R. 56(C) in support of his motion. Id. Once this burden is satisfied, the nonmoving party has the burden, as set forth in Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Id. The nonmoving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that shows a genuine dispute over the material facts exists. Henkle v.Henkle (1991), 75 Ohio App.3d 732, 735. Specifically,
 in an action by an employee against his employer alleging an intentional tort, upon motion for summary judgment by the defendant employer, the plaintiff employee must set forth specific facts which show that there is a genuine issue of whether the employer had committed an intentional tort against his employee.
Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115, 119, quoting Van Fossenv. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100, paragraph seven of the syllabus.
In order to establish a prima facie case within the common law meaning of an intentional tort by an employer, an employee must demonstrate each of the following:
 (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation;
 (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and
 (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.
Fyffe, 59 Ohio St.3d 115, paragraph one of the syllabus. Moreover, "[t]o establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established." Id. at paragraph two of the syllabus. The court in Fyffe
further explained:
 Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk — something short of a substantial certainty — is not intent.
Id. See, also, Van Fossen, 36 Ohio St.3d at 117. It is the element of substantial certainty which distinguishes a merely negligent act from intentionally tortious conduct. Van Fossen, 36 Ohio St.3d at 116.
The distinction between negligence, recklessness and substantial certainty is a matter of degree. Id. at 115. The line must be drawn where "`the known danger ceases to be only a foreseeable risk which a reasonable person would avoid, and becomes in the mind of the actor a substantial certainty.'" Id., quoting Prosser Keeton, Law of Torts (5 Ed. 1984) 36, Section 8.
In determining intent, this Court proceeds on a case-by-case basis and considers the totality of the circumstances. Church v. Rondy Co., Inc. (June 11, 1997), Summit App. No. 18037, unreported, at 7. Some of the relevant facts and circumstances which support the conclusion that an employer's knowledge that harm to the employee was a substantial certainty include, but are not limited to: prior acts of a similar nature, the employer's concealment or misrepresentations concerning the danger, and federal and/or state safety violations or noncompliance by the employer with industry safety standards. Id. at 7-8.
 The Garage Door Injury
Appellant has claimed that her first injury occurred when a large, automated garage door fell on top of her head as she was carrying donated goods into the back room. At her deposition, Appellant testified that at the time of the accident she was carrying a large box of donations that prevented her from seeing the garage door. Another employee of Appellee, Jane Ash ("Ash"), stated that she witnessed the garage door accident. According to Ash, Appellant and her co-worker James Mullins ("Mullins") were returning to the back room from taking trash outside, and Mullins reached the back room first and pressed the button to close the garage door. Ash stated that Appellant was struck by the door when she tried to "beat" the descending door into the back room.
Although the conflicting testimony presents a genuine issue of fact as to the origin of Appellant's garage door injury, this Court finds that summary judgment was nevertheless appropriate with respect to Appellant's intentional tort claim. Specifically, Appellant has failed to meet herDresher burden of presenting some evidence of Appellee's knowledge 1) that the garage door constituted a dangerous condition, or 2) that harm to Appellant was a substantial certainty if she continued to work near the door.
Appellee has cited deposition testimony of numerous witnesses in support of its argument that Appellee was not aware that the garage door constituted a dangerous condition that subjected Appellant to a substantial certainty of harm. Debra Barnosky ("Barnosky"), manager for Appellee for over nine years and Appellant's direct supervisor, testified that she knew of no problems caused by the garage door prior to Appellant's injury. Ash, Appellant's co-worker and Appellee's employee since 1994, testified that she was not aware of any problems caused by the operation of the garage door before Appellant's accident. Irene Reiber ("Reiber"), assistant manager for two years for Appellee, also testified that no employees had reported any problems with the garage door before Appellant's injury. Even Appellant testified that she was not aware of anyone else having been injured by the garage door.
In response, Appellant has directed this Court to her deposition testimony, in which she stated:
 I knew they had trouble with the garage door on [the previous] Saturday with it sticking because on several occasions that Saturday [assistant manager Irene Reiber] had had to climb up on the piles of donations to release something up by where the rope hangs on the garage door.[1]
Appellant has also pointed to the deposition testimony of her then co-worker Mullins, who stated: "I think what happened was the cord got stuck on a bag of clothes and actually come back down on its own." Appellant has also cited a memorandum from Marianne Carter ("Carter"), who worked in Appellee's human resources department, which referred to Appellant's accident. In the memorandum, Carter states that Powell examined the door and found it to be in perfect working order. According to the memorandum, however, Powell suggested that a possible cause of the accident might be the rope for the automatic disengage feature dragging across a pile of clothes and getting snagged, causing the door to disengage from the chain drive and either partially or totally close.[2]
Again, however, the evidence cited by Appellant does no more than present an issue of fact as to the cause of Appellant's injury. Appellant has presented no evidence that, prior to Appellant's injury, the garage door ever descended except when the button was pressed to mechanically close the door or it was manually pulled down after the disengage rope had been drawn. It is uncontroverted that Appellee's prior experience with malfunctions of the door consisted only of the door not responding when the button that controlled the mechanical opening and closing of the door was pressed. Nor is it disputed that Appellee promptly took action to repair the door on those occasions. Consequently, there is no evidence creating a genuine issue of fact as to whether Appellee knew prior to Appellant's injury that the garage door constituted a dangerous condition, or that Appellee knew that harm to Appellant was a substantial certainty if she continued to work near the door. Accordingly, Appellee was entitled to judgment as a matter of law on Appellant's intentional tort claim arising out of her garage door injury.
 The Slip and Fall Injury
Appellant's second injury occurred when she fell in the back room and struck her head on a porcelain sink that had been donated earlier in the day. It is unknown what caused Appellant's fall; Appellant testified that at the time of the accident she "had no idea" what she fell over. Shortly after her injury, a blue plastic band was found on the floor and identified as an object Appellant may have tripped over.
Again, however, Appellant must demonstrate more than a genuine issue of fact over the cause of her fall to withstand summary judgment on her intentional tort claim. Appellant must also demonstrate the existence of a genuine issue of material fact concerning Appellee's knowledge that the cluttered condition of the back room constituted a dangerous condition. Moreover, Appellant must show a genuine issue of material fact regarding Appellee's knowledge that harm to Appellant was a substantial certainty if she continued to work near the clutter.
Appellee has not disputed that the volume of donations created cluttered conditions in the back room, but has claimed that Appellee maintained clear walkways through and around the donations. Appellant has responded that Appellee's management was aware that the cluttered conditions of the back room created a risk that employees might fall and get hurt. Appellant has cited testimony by Reiber that "everybody complained" about the cluttered back room and the safety risks presented by the condition. Appellant's co-worker Mullins also testified that he complained to his supervisors several times about the clutter, and warned that "someone's going to fall and get hurt."
This Court finds, however, that any awareness by Appellee of a risk to employees caused by the clutter falls short of establishing a prima facie case of intentionally tortious conduct. Specifically, there is no genuine issue regarding knowledge by Appellee that continuing to work in the back room in spite of the clutter subjected Appellant to a substantialcertainty of harm. Appellant's co-worker Ash testified that there were clear walkways in the back room, and that employees complained about the volume of donations but not about fear that they would trip and fall over something. Barnosky testified that she was not aware of any complaints that employees could not safely work in the back room due to the clutter.
It is also undisputed that Appellee had procedures in place designed to minimize the risk posed by the clutter. Yellow lines were placed on the floor of the back room to mark passageways that were to be free of donations. Reiber testified that the aisleway to the donations door was kept clear "ninety percent of the time." On occasions when the store was overwhelmed with donations, Appellee had a trailer brought to the store, where excess donations could be warehoused to alleviate clutter in the back room. It is also significant that, according to the deposition testimony, no employee had ever suffered an injury in the back room as a result of the cluttered conditions.
After thoroughly reviewing the record, this Court finds that reasonable minds could only conclude that Appellee's conduct did not meet the requirements necessary to establish an intentional tort. The trial court properly determined that Appellee was entitled to judgment as a matter of law.
Appellant's sole assignment of error is overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
WHITMORE, J. CONCURS
[1] It is undisputed that the garage door had a rope near the top of the door that could be manually pulled to disengage the door from the mechanical opening and closing device. According to Barnosky, Ash, and Appellee's maintenance supervisor Carl Powell ("Powell"), this auto disengage rope had been utilized on at most two occasions, when the garage door motor had overheated and the door became "stuck" while it was raised up. These witnesses uniformly testified that when the disengage rope was drawn, the door had to be manually pulled down; it never came down on its own.
[2] In his deposition testimony, Powell adamantly rejected the possibility that the door might fall after the disengage rope had been pulled. Powell testified that once the disengage rope was pulled, there was a mechanism to hold the door at whatever position it was in until it was manually pulled down.