DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, El UK Holdings, Inc., appeals from the grant of summary judgment in the Summit County Court of Common Pleas. We reverse.
 I. {¶ 2} Appellant is a Delaware corporation with its principal place of business in Akron, Ohio, and is an indirect subsidiary of FirstEnergy Corp., an Ohio corporation with its principal place of business also in Akron. Cinergy UK, is also a Delaware corporation with a principal place of business in Cincinnati, Ohio, and is a wholly-owned subsidiary of Cinergy Corp. Both were named parties in the present action and are Appellees before this Court. Both Appellant and Appellees had ownership interest in foreign business entities. Specifically, Appellant and Appellees each owned 50% of the shares of Avon Energy Partners Holdings ("Avon"), an English corporation. Avon fully owned Avon Energy Partners pic, another English corporation, which in turn fully owned Midlands Electricity pic ("MEB"), a regional electric company also located in England. MEB fully owned Midlands Power (Isle of Man) Limited ("Midlands Power"). Midlands Power held a 40% interest in Uch Power Limited ("Uch"), a power project located in Pakistan.
 {¶ 3} On or about June 30, 1999, Appellant and Appellees entered into a Capital Reduction Agreement ("CRA") by which Appellant was to acquire Appellees' 50% interest in Avon, while allowing Appellees to retain certain assets and business of MEB. In addition, the CRA contained a provision regarding Uch. Per the CRA, Appellees were obligated to fund certain contributions or losses in connection with Uch; specifically, Appellees were to make certain payments to Appellant in the event of an Uch cash loss. This provision was inserted because there were financial and political problems with Uch. Appellee agreed to the reimbursement clause by which it would make payments to Appellant for 50% of any future Uch cash loss, subject to a cap of 20 million dollars.
 {¶ 4} In a Letter Agreement dated July 15, 1999, Cinergy Corp. guaranteed Cinergy UK's obligations under the CRA.
 {¶ 5} In March of 2002 ("first transaction"), Appellant sold 79.9% of Avon to Aquila Europe, Inc. Appellant and Aquila Europe created a holding company called Aquila Sterling Holdings ("ASH"). Aquila owned 79.9% of ASH and Appellant owned 20.1% to hold title to Avon and its foreign holdings. ASH wholly owned another holding company called Aquila Sterling Limited ("ASL"). In turn, ASL owned all of Avon. Avon's holdings were not altered during this transaction.
 {¶ 6} Subsequently ("second transaction"), in October of 2003, Appellant and Aquila sold all outstanding shares of ASH to EME Distribution, a subsidiary of Powergen UK, pic. Thus, EME became the full owner of ASH and all its holdings, including Avon, Avon Partners, MEB, Midlands Power and Midlands Power's 40% interest in Uch. This transaction closed in January of 2004.
 {¶ 7} In March of 2004, Midlands Power sold its 40% interest in Uch to International Power.
 {¶ 8} On March 14, 2004, Appellant filed a complaint against Appellees in the Summit County Court of Common Pleas. In this complaint, Appellant asserted Appellees had failed to make any payment to Appellant, and that Appellees have maintained through correspondence that their indemnification obligation has not yet been triggered. Appellant asserted breach of contract claims individually against each Appellee, sought indemnification from Cinergy UK for costs, expenses, and damages incurred as a result of Cinergy's alleged breach, and declaratory judgment of Cinergy's joint and several liability to Appellant and an obligation to pay Appellant as a result of the sale of the interest in Uch to a third party, unaffiliated with Appellant. In April of 2004, Appellees filed a motion to dismiss for improper venue, among other things. The trial court granted this motion and found that the foram selection clause in the CRA rendered Summit County an improper venue. Appellant appealed to this Court and we reversed, finding that Summit County was a proper venue and that New York law applies.
 {¶ 9} On remand, the parties filed cross-motions for summary judgment. The trial court held an oral hearing on the motions on February 10, 2006. On April 28, 2006, the trial court granted Appellees' summary judgment motion and denied Appellant's summary judgment motion. Appellant timely appealed from this decision, asserting two assignments of error for our review.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING [APPELLEES'] MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO WHETHER [APPELLEES] BREACHED THEIR AGREEMENTS TO REIMBURSE El UK FOR 50% OF El UK'S UCH CASH LOSS."
 {¶ 10} In its first assignment of error, Appellant argues that the trial court erred as a matter of law when it granted Appellees' motion for summary judgment. We agree.
 {¶ 11} This Court reviews an award of summary judgment de novo.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. We apply the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viockv. Stowe-WoodwardCo. (1983),13 Ohio App.3d 7, 12.
 {¶ 12} Pursuant to Civil Rule 56(C), summary judgment is proper if:
 "(1) No genuine issue as to any material fact remains to be litigated; the moving party is entitled to judgment as a matter of law; and it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
 {¶ 13} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292-93. Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). Id. Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. Id. The non-moving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. Henkle v.Henkle (1991), 75 Ohio App.3d 732, 735.
 {¶ 14} In this case, both parties filed motions for summary judgment. At issue was the interpretation of a clause in the CRA. Article VII, Section 8.1(c)(i) provided that:
 "The Seller further covenants and agrees that subject as provided below, it shall pay to the Buyers any remaining amount not paid by the Seller under paragraphs (a) or (b) above in the event of the occurrence of an Uch "Cash Loss", as defined below, if and when the MEB Sponsor's interest in Uch is sold to a third party not affiliated directly or indirectly with the Buyer." (Emphasis added.)
 {¶ 15} Appellant asserted that based on the sale of ASH to EME (second transaction) the above provision came into effect and that the Uch Cash Loss payment was due and payable by Appellees. Appellant reads section 8.1 to mean that the triggering event is when the interest in Uch is sold. Appellees asserted that the triggering event was when and if the MEB sponsor, itself, sells Uch. Appellant claimed that when it sold its interest in ASH to EME it also sold all of ASH's holdings, including its interest in UCH. The trial court found that there was "no provision in the CRA that a group sale or complete divestiture of all of Appellant's holdings under Avon would satisfy the requirement for the sale of the MEB Sponsor's interest." The trial court determined that the language of the clause was clear in that it required a specific sale of the MEB Sponsor's interest in Uch in order to calculate the Uch losses and that the fact that Appellant divested itself of all ownership in Avon (and subsequently down the chain, divested itself of its 40% ownership of Uch) did not activate section 8.1 of the CRA. We do not agree.
 {¶ 16} The trial court specifically found that the clause in question was not ambiguous. Under New York law, "[a] contract is ambiguous if the language used lacks a definite and precise meaning, and there is a reasonable basis for a difference of opinion." Pozament Corp. v. AESWestover (2006), 812 N.Y.S.2d 154, 156, 27A.D.3dl000, 1001. Further,
 "[t]he existence of ambiguity is determined by examining the entire contract and considering the relation of the parties and the circumstances under which it was executed with the wording to be considered in the light of the obligation as a whole and the intention of the parties as manifested thereby. The intent of the parties must be found within the four corners of the contract, giving a practical interpretation to the language employed and the parties' reasonable expectations. When a term or clause is ambiguous, the parties may submit extrinsic evidence as an aid in construction, and the resolution of the ambiguity is for the trier of fact." (Internal citations omitted.) Geothermal Energy Corp. v. Caithness Corp. (Nov. 8, 2006), 825 N.Y.S.2d 485, 2006, 34 A.D.3d 420, 424.
 {¶ 17} Therefore, if the clause is ambiguous and the intent of the parties cannot be found within the four corners of the document, the issue becomes one for the trier of fact. In such a case, summary judgment is not appropriate as there is an issue of material fact left to be determined.
 {¶ 18} We must first determine if the clause is ambiguous. As stated above, "[a] contract is unambiguous if the language it uses has`a definite and precise meaning, unattended by danger of misconception in the purpose of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion.' Thus, if the agreement on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity." Krystal Investigations Sec. Bur., Inc. v. United ParcelServ., Inc. (Dec. 26, 2006), — N.Y.S.2d — , *1 (N.Y.A.D. 2 Dept.) quoting Breed v. Ins. Co. ofN. Am. (Dec. 27, 1978), 46 N.Y.2d 351, 355. As the briefs point out, in this case, the agreement is reasonably susceptible to more than one meaning.
 {¶ 19} Appellant takes the position that the sale of ASL necessarily included the sale of all of ASL's holdings, including the MEB Sponsor and the MEB Sponsor's 40% interest in Uch. Therefore, under Appellant's broad reading of section 8.1, it is clear that MEB Sponsor's 40%interest in Uch "was sold" to an unaffiliated third party, even though the MEB Sponsor itself continued to own the interest in Uch.
 {¶ 20} Appellees take the position that section 8.1 is not triggered until the MEB Sponsor sells its interest in Uch. Thus, Appellees read the clause narrowly to state that their obligation to make a payment is solely dependent upon the MEB Sponsor's sale of its interest in Uch. Upon review of this section, we do not find either reading of this clause to be unreasonable. In other words, we find that the language is attended by the danger of misconception and that there is a reasonable basis for disagreement. As the agreement is reasonably susceptible to two different meanings, we find section 8.1 ambiguous.
 {¶ 21} The trial court found that the language in section 8.1 was unambiguous and as such, there was no need to determine the parties' intentions. Therefore, the trial court found there were no genuine issues of material fact to be resolved. We disagree. Finding the clause ambiguous, we next look to the entire document to determine the parties' intended meaning.
 {¶ 22} The ambiguous language found in Section 8.1(c)(i) is "if and when the MEB Sponsor's interest in Uch is sold to a third party[.]" As Appellees pointed out, had the parties intended the triggering event to be any sale, direct or indirect, of Uch, it could have, or perhaps, should have, used specific language to broaden the scope. However, as Appellant pointed out, if the parties had intended to limit indemnification to only if the MEB Sponsor sold its interest in Uch, it could have used specific language to reflect the limitation. Under either interpretation, the parties did not include any specific language to manifest their intent. Absent clear intent of the parties, we are not at liberty to rewrite the contract to make it unambiguous.Geothermal Energy Corp, supra. As we cannot determine the parties' intent from the four corners of the CRA, we cannot properly interpret section 8.1(c)(i). As such, the clause is ambiguous and the intent of the parties is at issue. Therefore, as there remains a genuine issue of material fact, summary judgment is inappropriate in the present case. Accordingly, we sustain Appellant's first assignment of error.
 ASSIGNMENT OF ERROR II "THE TRIAL COURT ERRED AS A MATTER OF LAW IN FAILING TO GRANT SUMMARY JUDGMENT IN [APPELLANT'S] FAVOR AND TO ENTER FINAL JUDGMENT AGAINST [APPELLEES], JOINTLY AND SEVERALLY, FOR $15.1 MILLION IN DAMAGES, PLUS PREJUDGMENT INTEREST."
 {¶ 23} In its second assignment of error, Appellant argues that the trial court erred as a matter of law in failing to grant summary judgment to Appellant. We do not agree.
 {¶ 24} In light of our above finding that there remains a genuine issue of material fact and therefore, summary judgment is not appropriate, Appellant's second assignment of error is overruled. SeeBalson v. Dodds (1980), 62 Ohio St.2d 287, at paragraph one of the syllabus (holding that "[a] trial court's denial of a motion for summary judgment is reviewable on appeal by the movant from a subsequent adverse final judgment").
 III. {¶ 25} Appellant's first assignment of error is sustained. Appellant's second assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed in part and reversed in part and the cause remanded for further proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to ran. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to both parties equally.
WILLIAM R. BAIRD FOR THE COURT
BOYLE, J.
CONCURS
CARR, P. J.
CONCURS IN JUDGMENT ONLY
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)