S.N., Appellee,

v.

M.B., Appellant;  Doe et al., Appellees.

[Cite as *S.N. v. M.B.,* 188 Ohio App.3d 324, 2010-Ohio-2479.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 09AP–1021.

Decided June 10, 2010.

Henshaw & Hete and Emily M. Hete, for appellee.

Golden & Meizlish Co., L.P.A., and Keith E. Golden; and Vincent A. Dugan Jr., for appellant.

———————

SADLER, Judge.

{¶ 1} Defendant-appellant, M.B.,[1] appeals from the April 27, 2009 decision and entry of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granting summary judgment to plaintiff-appellee, S.N., on her parentage action.

{¶ 2} The following facts and procedural history are taken from the record. In 2007, appellee, an unmarried woman and a resident of Florida, employed the services of the Center for Reproductive Health (the "Center") and Reproductive Assistance, Inc., both located in Cincinnati, Ohio, to assist her in locating a gestational surrogate, sperm donor, and egg donor to effectuate a gestational-surrogate pregnancy. Appellee reviewed donor profiles, selected sperm and egg donors, and purchased the donated eggs and sperm. That same year, appellant contacted Reproductive Assistance, Inc., expressing her desire to become a gestational surrogate. The Center paired appellant and appellee for purposes of gestational surrogacy.

{¶ 3} To that end, on December 6, 2007, the parties, as well as Timothy Frank, appellant's fiancé, executed a contact entitled "Surrogacy Agreement," which set forth all contractual terms of their arrangement. The surrogacy agreement designates appellee as the "Intended Mother" and appellant as the "Surrogate." According to the surrogacy agreement, appellant wished to assist appellee in achieving appellee's goal of becoming a parent by carrying to term embryos created through in vitro fertilization using an anonymous donor's egg and an anonymous donor's sperm. Appellant acknowledged that she entered into the surrogacy agreement voluntarily after obtaining independent legal advice and counsel.

{¶ 4} Under the terms of the surrogacy agreement, appellant agreed to relinquish, immediately upon birth, physical custody of and all rights or obligations to any children born as a result of the surrogacy. Of particular importance, appellant further agreed that "any child or children born to Surrogate as a result of this Agreement will be the Intended Mother's child or children." In addition, appellant agreed that she would sign any documents or participate in any legal proceedings required to ensure that appellee was legally

———

1. We identify the parties only by their initials to protect the identity of the minor child.

determined to be the mother of the child, including voluntarily cooperating in the lawful and prompt termination of parental rights to the child and any legal proceedings required for appellee to legally become the mother of the child.

{¶ 5} After the surrogacy agreement was executed, the Center combined the selected donor eggs and sperm through the process of in vitro fertilization and implanted the resulting embryos in appellant. As a result, appellant became pregnant with twins, with an expected delivery date of August 26, 2008.

{¶ 6} Due to complications with the pregnancy, appellant gave birth prematurely to the twins on May 15, 2008. Shortly after the birth of the children, the parties commenced adoption proceedings so that appellee could adopt the children. Following a dispute with appellee, the adoption agency refused to proceed with the adoption.

{¶ 7} One of the children passed away in late June 2008. The surviving child remained hospitalized for some time after birth due to significant medical problems that required two surgeries. The child was eventually released from the hospital; however, the child's medical problems persist, necessitating ongoing specialized health care. Immediately following the child's release from the hospital, appellant relinquished the day-to-day care of the child to an unrelated third party.

{¶ 8} In late July 2008, the parties' relationship became irreparably strained, and appellant thereafter refused to proceed under the terms of the surrogacy agreement. As a result, appellee, on August 18, 2008, filed a parentage action requesting DNA testing and seeking to disestablish maternity. On September 10, 2008, the parties filed a written stipulation that neither is biologically related to the child and a waiver of the requirement of DNA testing.

{¶ 9} On October 1, 2008, appellee filed an amended complaint, and on October 3, 2008, appellee filed a second amended complaint requesting that the court issue an order finding that appellant is not the legal mother of the child and that appellee is the legal mother of the child and requesting that if appellant was found to be the legal mother of the child, the court award appellee temporary and permanent custody of the child. On the same day, October 3, 2008, appellant filed a motion requesting the court to make a legal determination of parentage pursuant to R.C. 3111.02(A). On October 21, 2008, appellant filed an answer to appellee's complaint, along with a counterclaim for custody.

{¶ 10} In interim decisions filed October 6, 2008, and October 23, 2008, pertaining to the temporary allocation of parental rights and responsibilities, the trial court, after considering current statutory and case law and its applicability to surrogacy matters, found that the child at issue has no natural parents. Accordingly, the court resolved that its ultimate task was to determine which of

the parties should be treated in law and regarded as the child's legal mother. The court concluded that the determination could be made only after determining the validity and enforceability of the surrogacy agreement. The court found that until that determination could be made, appellant, the gestational surrogate, would be considered the presumptive maternal parent of the child and should thus be treated and regarded as the child's natural mother. The court further found, however, that the presumption of maternity was rebuttable and could be rebutted by proof that the gestational mother was not biologically related to the child and that there existed a valid and enforceable gestational-surrogacy agreement declaring the intent of the contracting parties that someone other than the gestational mother raise the child. Accordingly, the court concluded that if the surrogacy agreement was determined to be valid, it would be an enforceable contract, and appellee would be considered the child's legal mother.

{¶ 11} On February 18, 2009, appellee filed a motion for summary judgment, contending that no genuine issues of material fact remained to be litigated and that she was entitled to judgment as a matter of law on her parentage action. More specifically, appellee claimed that she was the legal mother of the surviving child, pursuant to the terms of the valid and enforceable surrogacy agreement, which sets forth the parties' intention that she raise any child born to appellant that had been conceived through in vitro fertilization using donor genetic components. Appellee maintained that the surrogacy agreement constituted sufficient evidence to rebut the presumption of maternity in favor of appellant. In support of her motion, appellee relied upon the terms of the surrogacy agreement and appellant's deposition testimony.

{¶ 12} On March 18, 2009, the trial court issued an order allowing appellant 14 days in which to reply to appellee's motion for summary judgment. On April 13, 2009, appellant filed a motion requesting additional time to respond to appellee's motion for summary judgment. The court granted the motion and allowed appellant until April 20, 2009, to file a response. Appellant failed to file a response by that date.

{¶ 13} On April 27, 2009, the trial court filed a decision and judgment entry granting partial summary judgment to appellee as to the issue of parentage. More particularly, the court, after review and consideration of statutory and case law pertaining to issues of paternity, maternity, and surrogacy, found that the determination of a parent-and-child relationship between a child and the child's natural mother should be interpreted and treated in accordance with a determination of a parent-and-child relationship between a child and the child's natural father, that is, that the parent-and-child relationship is a presumption that can be rebutted by proof of parentage. Having so concluded, the court determined that the presumption of maternity established by appellant having given birth to the

child was rebutted by proof that appellant was not biologically related to the child and that she had voluntarily entered into the surrogacy agreement whereby she relinquished and waived her right to be the child's natural and legal parent. Upon review of the surrogacy agreement and appellant's deposition testimony, the court found the surrogacy agreement to be a valid and enforceable contract under Ohio law, the terms of which are clear and unambiguous as to the issue of parentage. Having concluded that appellee successfully rebutted the presumption of maternity, the court found that appellee should be treated in law and regarded as the natural mother of the child and therefore ordered appellant to transfer physical custody of the child to appellee.

{¶ 14} Approximately one and one-half hours after the trial court filed its decision and entry, appellant moved to file her memorandum opposing appellee's motion for summary judgment instanter. The trial court granted appellant's motion the next day, April 28, 2009, after which appellant filed her memorandum. Therein, appellant argued that genuine issues of material fact existed regarding the validity of the surrogacy agreement, particularly regarding the parties' intentions in executing the contract, as well as appellee's breaches thereof. Appellant further argued that the matter should not be resolved on summary judgment pursuant to contract law, but, rather, only after a full and complete trial on all issues relating to the child's best interest. Later that same day, the trial court filed an entry stating that after review and consideration of appellant's memorandum, it reaffirmed its granting of partial summary judgment in favor of appellee.

{¶ 15} Following the trial court's determination on the issue of parentage, the matter proceeded to trial on appellant's complaint for custody. Following an August 2009 trial, the trial court, on October 2, 2009, filed a decision and entry ordering that appellee, the child's legal mother, retain custody of the child.

{¶ 16} Appellant timely appeals from the decision and judgment entries filed on April 27, 2009, and October 2, 2009, advancing a single assignment of error, as follows:

The trial court erred as a matter of law and also abused its discretion in granting appellee's motion for summary judgment finding appellee to be the natural mother of the minor child and awarding her temporary physical custody of the child without a hearing.

{¶ 17} In her sole assignment of error, appellant argues that the trial court erred as a matter of law and abused its discretion in granting appellee's motion for summary judgment finding appellee to be the natural mother of the child and awarding her temporary physical custody of the child without a hearing.

{¶ 18} Pursuant to Civ.R. 56(C), summary judgment is proper only where the evidence demonstrates that (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, and that conclusion is adverse to the moving party. *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343. Any doubts must be resolved in favor of the nonmoving party. *Viock v. Stowe–Woodward Co.* (1983), 13 Ohio App.3d 7, 12, 13 OBR 8, 467 N.E.2d 1378.

{¶ 19} The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the nonmoving party's claims. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. The moving party may not fulfill its initial burden simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Id. Rather, the moving party must support its motion by pointing to some evidence of the type set forth in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. Id. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. Id. However, once the moving party satisfied its initial burden, the nonmoving party bears the burden of offering specific facts showing that there is a genuine issue for trial. Id. The nonmoving party may not rest upon the mere allegations and denials in the pleadings, but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. Civ.R. 56(E); *Henkle v. Henkle* (1991), 75 Ohio App.3d 732, 735, 600 N.E.2d 791.

{¶ 20} Appellate review of summary judgment is de novo, and we apply the same standard as that employed by the trial court. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. As a result, this court stands in the shoes of the trial court and conducts an independent review of the record.

{¶ 21} Appellant contends that the trial court erred in granting summary judgment to appellee in four respects. Appellant first contends that the trial court erred in granting summary judgment to appellee because genuine issues of material fact remain to be litigated related to (1) appellee's breach of the surrogacy agreement, (2) appellant's incapacity to perform under the surrogacy agreement, and (3) appellee's refusal to mediate or arbitrate pursuant to the terms of the surrogacy agreement. Appellant next contends that the trial court erred in granting summary judgment to appellee as a matter of law. Third, appellant contends that the trial court erred in granting summary judgment to appellee because reasonable minds can reach more than one conclusion as to the

parentage issue. Finally, appellant contends that the trial court erred in granting summary judgment to appellee without affording appellant a hearing. We will address appellant's arguments in an order that facilitates our discussion.

{¶ 22} We first address appellant's contention that the trial court erred in granting summary judgment to appellee as a matter of law. Appellant argues that the trial court erroneously determined that the Ohio Parentage Act, codified at R.C. Chapter 3111, governs the determination of parentage in circumstances where, as here, neither of the women who are parties to the surrogacy agreement is genetically related to the child. More specifically, appellant contends that the trial court erred in finding that the determination of a parent-and-child relationship between a child and the child's natural mother should be interpreted and treated in the same way that R.C. Chapter 3111 addresses the determination of a parent-and-child relationship between a child and the child's natural father, that is, that the parent-and-child relationship is a presumption that may be rebutted by proof of parentage. Appellant further contends that the trial court erred as a matter of law in concluding that the written surrogacy agreement constituted a valid and enforceable contract that sufficiently rebutted the presumption of maternity.

{¶ 23} Parentage is an area of law governed primarily by statute. Ohio's Parentage Act is codified in R.C. Chapter 3111. R.C. 3111.01(A) states: " 'Parent and child relationship' means the legal relationship that exists between a child and the child's natural or adoptive parents and upon which those sections and any other provision of the Revised Code confer or impose rights, privileges, duties, and obligations. The 'parent and child relationship' includes the mother and child relationship and the father and child relationship." In our view, the term "natural" as used in R.C. 3111.01(A) simply refers to a parent who is not an adoptive parent. R.C. 3111.01(B) provides that "[t]he parent and child relationship extends equally to all children and all parents, regardless of the marital status of the parents." The "parent and child relationship" is thus a legal relationship encompassing two kinds of parents, "natural" and "adoptive."

{¶ 24} Passage of R.C. Chapter 3111 was not motivated by the need to resolve surrogacy agreements, which were relatively unknown when R.C. Chapter 3111 was enacted in 1982. Yet it facially applies to any parentage determination, including the unusual case in which a child's maternity is at issue. As noted, appellant maintains that R.C. Chapter 3111 does not expressly apply in situations where, as here, neither of the women who are parties to the surrogacy agreement is genetically related to the child. Given the scientific advancements in reproductive technology and the increasing use of surrogacy agreements in recent years, it is not surprising that the statutes controlling the establishment of the parent-and-child relationship fail to reflect and address those issues. Nonetheless,

courts are frequently called upon to construe statutes in factual settings not contemplated by the enacting legislature. In light of our responsibility to decide this case, we believe that R.C. Chapter 3111 offers a method to resolve the dispute, albeit one not specifically tooled for it. Accordingly, we proceed to analyze the parties' contentions within the framework of R.C. Chapter 3111.

{¶ 25} We turn to those few provisions of R.C. Chapter 3111 that directly address the determination of maternity. "Any interested party," presumably including a party to a surrogacy agreement, "may bring an action to determine the existence or nonexistence of a mother and child relationship." R.C. 3111.17. R.C. 3111.02(A) provides, "The parent and child relationship between a child and the child's natural mother may be established by proof of her having given birth to the child," or pursuant to certain provisions under R.C. Chapter 3111. The use of the term "may" indicates that proof of giving birth is a permitted method of establishing a mother-and-child relationship, although perhaps not the exclusive method. Similarly, the use of the disjunctive "or" contemplates an alternative to proof of having given birth. Apart from R.C. 3111.02(A), R.C. Chapter 3111 does not set forth any specific means by which a natural mother can establish a parent-and-child relationship. However, R.C. 3111.17 declares that insofar as practicable, provisions applicable to the father-and-child relationship apply in an action to determine the existence or nonexistence of a mother-and-child relationship. Thus, it is appropriate to examine those provisions as well.

{¶ 26} R.C. 3111.02(A) provides that the parent-and-child relationship between a child and the child's natural father may be established by, among other ways, a voluntary acknowledgment of paternity. R.C. 3111.10 states that evidence of paternity may be established in several ways, including "[a]ll other evidence relevant to the issue of paternity of the child." In addition, R.C. 3111.03 provides that a man is presumed to be the natural father of a child under certain specified conditions, which may be rebutted by clear and convincing evidence that includes the results of genetic testing. The legislature has thus determined that the father-and-child relationship is a presumption that may be rebutted upon proof of parentage. By permitting a man to be regarded as the natural father of a child through voluntary acknowledgement of paternity, the General Assembly makes clear that a person who intends to raise and consents to raising the child shall be treated in law and regarded as the natural parent.

{¶ 27} As noted, R.C. 3111.17 provides that the provisions pertaining to the issue of paternity may be applied to the issue of maternity. Thus, the General Assembly has determined that the determination of a parent-and-child relationship between a child and the child's natural mother may be interpreted and treated in the same way that R.C. Chapter 3111 addresses the determination of a parent-and-child relationship between a child and the child's natural father.

Accordingly, just as in the case of presumptive paternity, a presumption of maternity exists that may be rebutted by clear and convincing evidence.

{¶ 28} As noted, R.C. 3111.02(A) provides that the parent-and-child relationship between a child and the child's natural mother may be established by proof of the mother having given birth to the child. Thus, a parent-and-child relationship between appellant and the child may be presumed by proof of her having given birth to the child as set forth in R.C. 3111.02. However, as noted above, the presumption may be rebutted by clear and convincing evidence of proof of parentage, including, as in the case of paternity, a voluntary acknowledgement of maternity. In this case, the surrogacy agreement, which sets forth appellee's clear intention to cause the birth of the child and raise it as her own, manifests appellee's voluntary acknowledgement of maternity. Appellee's voluntary acknowledgement of maternity is sufficient to rebut the presumption that appellant is the child's natural mother by reason of her having given birth to the child.

{¶ 29} Appellant maintains, however, that the surrogacy agreement does not constitute a valid and enforceable contract that sufficiently rebuts the presumption that she is the child's natural mother due to her having given birth to the child. We disagree.

{¶ 30} In *J.F. v. D.B.*, 116 Ohio St.3d 363, 2007-Ohio-6750, 879 N.E.2d 740, the Supreme Court of Ohio determined that "[a] written contract defining the rights and obligations of the parties seems an appropriate way to enter into [a] surrogacy agreement." Id. at ¶ 5. The court determined that if the parties understand their contractual rights under the surrogacy agreement, requiring the parties to honor the contract they entered into is manifestly right and just. The court concluded: "Ohio does not have an articulated public policy against gestational-surrogacy contracts. Consequently, no public policy is violated when a gestational-surrogacy contract is entered into, even when one of the provisions requires the gestational surrogate not to assert parental rights regarding children she bears that are of another woman's artificially inseminated egg." Id. at ¶ 6. The court did not limit its holding to the type of surrogacy agreement at issue in that case. Accordingly, nothing in Ohio law prohibits surrogacy agreements or the enforcement of the terms of surrogacy agreements similar to the one at issue in this case.

{¶ 31} No Ohio court has addressed the elements necessary to establish the validity of a surrogacy agreement. However, as noted by the court in *J.F.*, when parties understand their contractual rights under a surrogacy agreement, requiring the parties to honor the contract they executed is manifestly right and

just. Accordingly, we must apply the law of contracts in interpreting the validity of the surrogacy agreement in the instant matter.

{¶ 32} Essential elements of a valid contract include an offer, an acceptance, contractual capacity, consideration, a manifestation of mutual assent, and legality of object and of consideration. *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16. Here, the record contains significant evidence that the parties entered into a valid written contract. Appellant testified that she offered and appellee accepted her offer to serve as a gestational surrogate for appellee's child. The parties then drafted a written surrogacy agreement following extensive negotiations and with the aid of counsel. The surrogacy agreement sets forth the parties' contractual rights and responsibilities in great detail. Indeed, the surrogacy agreement includes an acknowledgement by the parties that they entered into the agreement voluntarily and with the aid of counsel. In addition, in her deposition testimony, appellant stated that at the time she executed the surrogacy agreement, she was not under the influence of any drugs or alcohol, she was over 18 years of age, she intended to comply with the terms of the agreement, she was represented by counsel, there was a mutual understanding between the parties regarding the meaning of the agreement, and by signing the agreement she indicated her desire to enter into the contract. In consideration for acting as appellee's gestational surrogate, the surrogacy agreement requires that appellee pay for all of appellant's unreimbursed medical costs associated with the surrogacy, the cost of a $200,000 term life insurance policy for appellant, and an additional $15,000 for living expenses. In her deposition, appellant acknowledged that she received compensation throughout the term of the contract. In her memorandum opposing appellee's motion for summary judgment, appellant neither offered nor pointed to any evidence disputing the terms of the surrogacy agreement.

{¶ 33} We thus conclude that the record contains clear and convincing evidence rebutting the presumption that appellant is the child's mother. Appellant stipulated that she is not genetically related to the child. The genetic mother and father of the child are anonymous egg and sperm donors, and both have waived any parental interest in the child. The parties entered into a valid and enforceable surrogacy agreement setting forth the parties' rights and responsibilities with regard to the child. In setting forth those rights and responsibilities, the parties clearly expressed their intentions regarding parentage of the child. When interpreting a contract, a court's principal objective is to ascertain and give effect to the intent of the parties. *Hamilton Ins. Servs., Inc. v. Nationwide Ins. Cos.* (1999), 86 Ohio St.3d 270, 273, 714 N.E.2d 898. "The intent of the parties to a contract is presumed to reside in the language they chose to

employ in the agreement." *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus.

{¶ 34} In the surrogacy agreement, appellant agreed to relinquish physical custody of any and all rights to the child. She further agreed that the child to whom she gave birth would be appellee's child. She also agreed to sign any documents or participate in any legal proceedings required to ensure that appellee is legally determined to be the mother of the child, including voluntarily cooperating in the lawful and prompt termination of parental rights to the child and any legal proceedings required for appellee to legally become the mother of the child. The language employed by the parties in the surrogacy agreement clearly and unambiguously manifests their intention that appellant relinquish all parental rights to the child and that appellee be the child's legal mother.

{¶ 35} For the foregoing reasons, we hold that the trial court did not err as a matter of law in analyzing the child's parentage under R.C. Chapter 3111 and, in doing so, concluding that appellee had successfully rebutted appellant's presumptive parentage.

{¶ 36} Appellant next contends the trial court erred in granting summary judgment to appellee without affording appellant a hearing. Appellant does not challenge the procedural aspects of the summary-judgment proceedings in this case; rather, appellant contends that summary-judgment proceedings were not the appropriate vehicle by which to determine custody of the child. Appellant maintains that the interest of parents in custody of their children is a fundamental right protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and that her due process rights were violated by the trial court's grant of summary judgment on the custody issue without affording her a hearing.

{¶ 37} As noted previously, the sole issue before the court on summary judgment was the establishment of parentage and, more specifically, whether the surrogacy agreement constituted a valid and enforceable contract sufficient to rebut appellant's presumptive parentage. Appellant has failed to direct this court to any statutory or case law establishing that summary-judgment proceedings were not the appropriate vehicle by which to determine parentage. We further note that the *J.F.* case before the Supreme Court of Ohio, which involved a gestational-surrogacy agreement and the enforcement thereof, was decided on motions for summary judgment. Finally, we note that appellant's custody request was determined following a full evidentiary hearing.

{¶ 38} Third, appellant contends that genuine issues of material fact remain to be litigated pertaining to (1) appellee's breach of the surrogacy agreement, (2) appellant's incapacity to perform under the surrogacy agreement, and (3) appellee's refusal to arbitrate pursuant to the terms of the surrogacy agreement.

{¶ 39} Appellant points to several provisions of the surrogacy agreement, alleging that appellee's breach thereof rendered impossible her performance thereunder. The sole issue before the court on summary judgment was the establishment of parentage, and, more specifically, whether the surrogacy agreement constituted a valid and enforceable contract sufficient to rebut appellant's presumptive parentage. Appellant's contentions regarding appellee's alleged breaches of the surrogacy agreement and appellant's resultant incapacity to perform were not at issue during the summary-judgment proceedings. Those contentions were raised in connection with appellant's complaint for custody. Following the August 2009 trial on the custody issue, the trial court, in its October 2, 2009 decision and entry, specifically found that "neither party materially breached the Surrogacy Agreement during the course of the pregnancy up to and including the birth of the twins." Appellant's assignment of error is limited to the trial court's decision granting summary judgment to appellee on her parentage action. Accordingly, we may not address appellant's breach-of-contract allegations. Further, to the extent that appellant asserted in her memorandum opposing summary judgment that appellee had breached the surrogacy agreement, we note that appellant did not set forth the alleged breaches with any degree of specificity, such as which provisions of the agreement appellant had allegedly breached, and she neither attached, nor pointed to, evidentiary materials in support of her arguments.

{¶ 40} Similarly, appellant's contention pertaining to appellee's alleged refusal to arbitrate, pursuant to the terms of the surrogacy agreement, was not at issue in the summary-judgment proceedings. Therefore, we may not consider appellant's contention on appeal. In addition, appellant did not raise that issue in her memorandum opposing appellee's motion for summary judgment.

{¶ 41} Finally, appellant contends that the trial court erred in granting summary judgment to appellee because reasonable minds can come to more than one conclusion as to the parentage issue. Appellant submits that, given the facts of the instant case, reasonable minds could come to a conclusion favoring appellant as the child's natural mother. Having already determined that the trial court did not err as a matter of law in concluding that R.C. Chapter 3111 governs the matter at issue and that the surrogacy agreement is a valid and enforceable contract, we find that reasonable minds can come to but one conclusion–that pursuant to Ohio law, appellee is the child's legal and natural mother.

{¶ 42} For the foregoing reasons, appellant's single assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is hereby affirmed.

Judgment affirmed.

FRENCH and CONNOR, JJ., concur.