CASTLE ET AL., APPELLEES, *v.* DANIELS ET AL., APPELLANTS.

(No. 83-CA-26—Decided April 25, 1984.)

*Mr. John F. Canizzaro,* for appellees.

*Mr. John W. Dailey, Jr.,* for appellants.

BROGAN, P.J. This appeal arises from the judgment of the Common Pleas Court of Champaign County, Ohio, granting plaintiffs-appellees, Elva L. Castle and his two sons, Steven and Keith, their request for the reformation of a deed which they had conveyed to the defendants-appellants, Steven A. and Connie S. Daniels. From this judgment the defendants have timely appealed to this court setting forth the following two assignments of error:

I

"In order to have reformation of an instrument on the ground of mistake, it is necessary that the mistake be mutual which must be shown by clear and convincing proof, which burden of proof was not met by the appellees in instant case."

II

"Any alleged mistake in the deed was occasioned by negligence of the appellees and is a bar in equity to reformation of said deed."

Because these two assignments of error raise a similar issue they shall be

treated together. Essentially appellants challenge the sufficiency of the evidence as it pertains to whether the appellees had established by the requisite burden of proof that the error in the deed was in fact the result of a mutual mistake. In actions such as this where reformation of an instrument is sought, the mistake and its mutuality, set up as a ground for such reformation, must be proved by clear and convincing evidence. *Farr* v. *Ricker* (1889), 46 Ohio St. 265. Upon review of the record we are of the opinion the trial court's decision is sufficiently supported by the evidence and consequently these assignments of error are without merit.

On or about April 19, 1978 the appellees conveyed by warranty deed lot 247 in North Lewisburg, Champaign County, Ohio to the appellants. According to the description in the deed the appellants obtained title to the entire lot including a hay field in the northeast corner of the property on which sat an old barn. The complainants alleged that there was no intention to include this hay field and barn in the sale. Appellees dispute this claim. Also contained within the description of the deed was certain property owned by one Lucy McClung. Appellants concede that there was no intention to include this property in the conveyance.

On March 3, 1978 the parties herein entered into a contract for the purchase of the real estate owned by the Castles. The terms of the agreement made the sale contingent upon appellants' obtaining sufficient financing to cover the $27,500 purchase price. The appellants' initial attempt to obtain financing through The Perpetual Bank in Urbana, Ohio failed. Upon suggestion of the appellees the appellants contacted the American Fletcher Mortgage Company (American Fletcher) and were successful in obtaining suitable financing for the purchase.

The record reveals a survey was conducted by Gary Erlenbach at the request of American Fletcher in April 1978. He testified he conducted a location survey on part of lot 247 as instructed by American Fletcher. The information supplied to him came from American Fletcher. Also, he was apparently in contact with Keith Castle prior to the survey, but the record fails to disclose the extent of their conversations. Based upon the information provided, Erlenbach prepared a plat of the premises for the mortgage loan company. This plat clearly excludes the disputed parcel containing the barn and hay field. It also excludes the property owned by McClung. It is the property as described in this plat that the appellees maintain was intended to be conveyed to the appellants.

There is ample evidence in the record, albeit disputed by the appellants, that they were fully aware of the intended boundaries. Keith Castle was the one appellee who had the most contact with Steven Daniels during the negotiations surrounding this transaction. He testified he was remodeling the residence on lot 247 in February 1978 when Steven Daniels stopped by to inquire about its availability for purchase. Keith Castle said he described the layout of the property at that time. He also testified that on one Saturday morning in April he walked off the boundary line with Steven Daniels clearly indicating the disputed portion was not included. He also stated he had made clear to Daniels on several occasions the extent of the property included. Elva Castle corroborated Keith's testimony claiming he was present at the time Keith walked the boundary with Steven Daniels.

In addition there was testimony from several other witnesses which supported the appellees' claim that there was a mutual mistake in the conveyance. Jack Engle had conducted a survey of part of lot 247 and its adjoining lot 344 (owned by the appellees) in June 1981. He was requested to do so by Elva Castle. While conducting this survey

Engle discovered the discrepancy between the plat prepared for the mortgage company and the description in the deed. He brought this to the attention of Keith Castle.

Engle further testified he met Steven Daniels while conducting the survey and engaged him in a conversation. He stated Daniels made reference to his expectation in acquiring certain land in the disputed area in the near future. He further stated that he was able to glean from the conversation that Steven Daniels understood he did not own the disputed portion.

Both Keith and Elva Castle testified that in June 1981, they had decided to have a survey done of their remaining property in order to divide it into two lots. Keith Castle then intended to build a house on one of these lots. At this time the Castles claim Steven Daniels came to them concerning the acquisition of some of the disputed property for the purpose of squaring off his land in order to build a garage. They asserted an agreement was reached whereby Daniels agreed to pay for the survey in exchange for the conveyance of the property necessary to square his land off. This property was already included in the warranty deed conveyed to the Daniels. Shortly after this, Engle conducted his survey. At trial appellant Steven Daniels denied any such agreement ever existed.

The Castles also claimed that as of July 1981, Daniels was willing to reconvey the unintended property back to the Castles. They testified that they were later told by Daniels he could not reconvey as the loan company had threatened to accelerate their payments if he did so. Once again Daniels denied this.

Rachel Weaver is the sister-in-law of Elva Castle and aunt to Keith. In July 1981 she was employed as a secretary-bookkeeper in the real estate offices of Weaver & Castle. She stated she had heard a conversation take place at the office where both appellants said they were aware of the mistake and were willing to correct it. She also claims to have overheard a conversation regarding the Daniels' agreement to pay for a survey in exchange for the land which would enable them to square off their present property.

In addition to the above-mentioned testimony the record discloses conduct on behalf of the appellants which is inconsistent with their claim they believed they owned the property as described in the deed. Initially, the fact they admit they have no interest, or ever believed they had an interest in the McClung property, supports a finding they did not rely solely on the deed. Further the record reveals that from 1978 to 1981 hay was being harvested twice a year from this disputed land without any objection by the appellants. Steven Daniels admitted he was aware of this harvesting, and that he did not order it or receive any compensation for the use of the land. It is also undisputed that the barn was torn down at the direction and expense of the appellees. Once again the Daniels never objected even though they claim they owned the barn.

At the time of the conveyance to the Daniels in 1978 the Castles also owned lots 250 and 344. They had originally acquired the three lots in a single deed of fiduciary from the Estate of Clara Pennington in May 1977. The subsequent deed conveyed to the Daniels contained the exact description for Tract I as is described in the deed to the Castles. The Daniels' deed merely excludes Tract II and III, that being lots 344 and 250. There is some testimony by both Elva and Keith Castle to the effect that as they understood the deed, the disputed land was part of lot 344. This misconception may have been responsible in part for their mistaken belief that the deed did exclude the disputed land.

The deed conveying the land to the Daniels was prepared by a disinterested attorney who had been retained by the

Ohio Title Corporation. Apparently Ohio Title had been retained by American Fletcher. Somewhere along the line a misunderstanding or mistake occurred resulting in the inclusion of land in excess of which the parties had bargained for. Unfortunately no one discovered the apparent error until 1981. It is undisputed however that the appellants were provided with a copy of the Erlenbach plat at the closing. This plat clearly illustrates the layout of the land intended for sale. No objection was raised by appellants to this plat during the closing. As discussed above, their subsequent conduct and use of the land is consistent with that illustrated by the plat.

The province of reformation is to make a writing to express the agreement that the parties intended it should. 1 Restatement of the Law 2d, Contracts (1981) 406, Section 155, Comment *a*. In actions in which reformation of an instrument is sought:

"[T]he mere fact that the parties at the time of trial testify differently as to what their agreement was does not necessarily mean that there was no agreement between them, nor does it necessarily mean that they were not mutually mistaken concerning the expression of their agreement in the instrument; in this respect, it has been pointed out that if the fact alone that the parties testify differently at the trial would prevent a finding that there was an agreement between the parties, a court could never determine whether there was a contract in a lawsuit where the parties disagree and testify differently." 13 Ohio Jurisprudence 3d (1979) 363, Cancellation, etc. of Instruments, Section 76.

Thus, where an action in reformation is commenced, credible testimony concerning the conduct of the parties, any course of dealing between them, and the method of handling the specific transaction in question are entitled to

great weight in determining the ultimate facts; to wit, the agreement. *Neff v. Ulman* (Oct. 23, 1981), Darke App. Nos. 1027 and 1028, unreported (citing *Haller v. Holthouse* [App. 1952], 68 Ohio Law Abs. 156).

The testimony at trial and conduct of the appellants support by clear and convincing evidence a finding that a mutual mistake had occurred in the conveyance of the Castles' property to the Daniels in 1978. Although the credibility of the various witnesses is certainly a factor in this case, it is not the function of a reviewing court to weigh that credibility. It is for the trial court to make that determination. We are obligated to give due deference to the trial court in these matters. Consequently we must affirm the trial court judgment where supported by the evidence.

Appellants made much of the fact that the mistake, if any, in the deed was the result of the negligence of the appellees and as such provides no basis for relief. See 13 Ohio Jurisprudence 3d, *supra*, at 294, Section 24. Appellants rely primarily upon the language in *Allen v. Mitchell* (App. 1975), 75 O.O. 2d 255, 262, wherein the court stated:

"* * * a person who is able to read a document he signs but fails to do so when the opportunity is afforded is not entitled to have such document set aside on the grounds that he was misled into signing a paper different from that which he intended to sign, at least in the absence of evidence that he was induced by the other party to such document into not reading it."

We are of the opinion this language must be read in the context of the facts presented in that case. In *Allen,* the court was confronted with an attempt to rescind a release agreement concerning further liability in a personal injury case. Therein, the court relied on several Ohio Supreme Court decisions dealing with similar releases. In particular the court

relied upon *McBennett* v. *Piskur* (1965), 3 Ohio St. 2d 8 [32 O.O.2d 5]. In *McBennett* the court made several references to the fact that the instrument involved was written in simple clear language. Similarly, in *Allen, supra,* the court at 263 concluded that "the release in question is sufficiently clear that a person of ordinary intelligence in reading it would understand * * *."

In the present matter we are confronted with an instrument which is somewhat more complicated than a simple release. The description in a deed often contains somewhat confusing language making repeated references to various landmarks and directions which cannot be fully comprehended without the aid of a plat map. We do not therefore construe *Allen* as authority for denying relief in this matter. To do so would effectively deny reformation of a deed in all cases as deeds are customarily present at the closing. This would be contrary to established precedent by this as well as other courts of Ohio. See, *e.g., Haller* v. *Holthouse, supra* (wherein the Montgomery County Court of Appeals approved the reformation of a deed where the mistake arose out of an error by the scrivener of the deed).

In the present matter both the plat map and the deed were present at the closing. Of the two documents the plat is much more clear and lends itself to easy comprehension. It is therefore understandable how each party may have been misled into believing the deed described that which was intended to be conveyed. Although the Castles might have been remiss in failing to discover the discrepancy, the Daniels were equally remiss as they also had an interest in assuring they received that for which they had bargained. Consequently the trial court could have properly concluded that the facts did not amount to a unilateral mistake caused solely by the Castles' negligence.

In the present matter the outward manifestations indicate both parties believed that the intended conveyance was different from that contained in the deed. The testimony of the witnesses, the existence of the plat map, and the use of the land by both parties support the trial court's findings. The record indicates neither party was at greater fault for the error, rather it appears the deed contained the improper description as a result of a mutual mistake. Appellants argue the equities in this matter should be weighed in their favor in light of the fact both Keith and Elva Castle had experience in real estate transactions. The transcript discloses that Elva Castle had been involved in real estate for nearly twenty years. He claims however that his partner, Weaver, had been responsible for most of the real estate deals, and as such he could not read deeds very well. Keith Castle had obtained his real estate agent's license in late 1977. There is no indication in the record as to how much experience he had acquired by April 1978. In any event the trial court chose not to penalize the appellees because of their prior experience. We believe appellees were justified in their actions in view of the circumstances surrounding this transaction. In light of the overwhelming evidence indicating the appellants did not believe they were obtaining the disputed land in the conveyance we see no justifiable reason for disturbing the trial court's order. As such, reformation as ordered by the trial court was appropriate.

The trial court committed no error in finding that the appellees had met their burden of proving mutual mistake by clear and convincing evidence. Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the weight of the evidence. *C. E. Morris Co.* v. *Foley Construction Co.*

(1978), 54 Ohio St. 2d 279 [8 O.O.3d 261].

Appellants' first and second assignments of error are not well-taken. The judgment of the trial court is affirmed.

*Judgment affirmed.*

WILSON and WEBER, JJ., concur.