**HENKLE, Appellant,**

v.

**HENKLE et al., Appellees.**

[Cite as *Henkle v. Henkle* (1991), 75 Ohio App.3d 732.]

Court of Appeals of Ohio,
Madison County.

No. CA90–11–025.

Decided Aug. 26, 1991.

*Abroms & Weisz, Irving B. Marks* and *J. Harris Leshner*, for appellant.
*Robert D. Woods*, for appellees.

KOEHLER, Judge.

On September 8, 1988, plaintiff-appellant, Clarriette C. Henkle, filed a complaint against defendants-appellees, Annette J. Henkle, both individually and as administrator for the estate of John R. Henkle, deceased, and Jacob R.

Henkle, the sole surviving son of John R. Henkle. The complaint alleged that a real estate transfer from appellant to her grandson John R. Henkle was void and should be set aside. Appellant set forth four claims for relief: undue influence, mistake, unjust enrichment, and constructive trust.

The record reveals that appellant had owned a two-hundred-twenty-acre farm, popularly known as the "Henkle Farm," since the 1950s. Starting in the early 1980s, appellant permitted her grandson John Henkle to operate and manage her farm. John Henkle demonstrated considerable skill and knowledge in managing the farm and appellant entrusted many of her farm-related and business affairs to him.

On February 4, 1988, appellant executed a warranty deed conveying most of the Henkle Farm to John Henkle, while reserving a life estate for herself. At the same time, she also executed another warranty deed conveying 1.7 acres of the farm to her son, Robert Henkle. On that date, John Henkle drove appellant to a parking area in front of the law office of appellant's long-time attorney. Appellant did not go to the office because she had difficulty climbing stairs. As she sat in the passenger's side of John Henkle's pickup truck, appellant signed documents which he handed to her. John Henkle was the only other person present at the time appellant signed these deeds. She admitted knowing that the documents were deeds, but that she did not read them.

John Henkle died intestate on April 21, 1988. He was survived by his wife, Annette J. Henkle, and his son, Jacob R. Henkle, both of whom stand to inherit the Henkle Farm as the statutory beneficiaries of his estate. It was after John Henkle's death that appellant decided to file a lawsuit to set aside the deed.

On November 15, 1989, appellees filed a motion for summary judgment. In support of the motion, they attached various portions of appellant's deposition. Subsequently, appellant filed a memorandum contra the motion for summary judgment and in support of that motion attached her entire deposition along with an affidavit.

In the deposition, appellant indicated that it was always her desire that the Henkle Farm should remain in the Henkle family. It was her understanding that John Henkle would operate the farm and that some time in the future he would convey home sites on the property to three of his brothers. She stated that she was aware in the two and one-half months following the execution of the deed but before John's death that she had signed the deed that conveyed the property to John and that he had not conveyed the home sites to his brothers as he promised. She indicated that she did not object because at that time his brothers did not want the property.

The trial court concluded that appellant " * * * failed to allege facts in support of her complaint which would justify the extreme measure of overturning a deed" and granted summary judgment in favor of appellees. This appeal followed.

In her sole assignment of error, appellant states that the trial court erred in holding that no issue of material fact exists such that the appellees were entitled to judgment as a matter of law. Appellant argues that appellees' motion for summary judgment was not properly supported, and that reasonable minds could not come to but one conclusion that is adverse to appellant. We find this assignment of error is not well taken.

Pursuant to Civ.R. 56, summary judgment is appropriate if (1) there is no issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his or her favor. The burden of showing that no genuine issue exist as to any material fact falls upon the moving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47. When a motion for summary judgment is made and supported as provided for in Civ.R. 56(C), the nonmoving party may not rest upon the mere allegations and denials in the pleadings. The nonmoving party is then obligated to submit or point to some evidentiary material showing that there is a genuine issue for trial. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801–802; *Toledo's Great Eastern Shoppers City, Inc. v. Abde's Black Angus Steakhouse No. III, Inc.* (1986), 24 Ohio St.3d 198, 200, 24 OBR 426, 427–428, 494 N.E.2d 1101, 1102–1103.

With this standard in mind, we will now decide whether summary judgment was appropriate as to each of appellant's claims for relief. Appellant's first claim for relief was undue influence. She alleged that she and John Henkle maintained a confidential relationship and that because of this relationship John Henkle was able to exert undue influence over her, thereby coercing her to convey to him the Henkle farm.

A deed executed in the correct form is presumed to be valid and will not be set aside except upon clear and convincing evidence. Therefore, a party seeking rescission and cancellation of a deed because of undue influence bears the burden of proof by clear and convincing evidence. *Weaver v. Crommes* (1959), 109 Ohio App. 470, 474–475, 12 O.O.2d 15, 16–17, 167 N.E.2d 661, 664–665; *Flynn v. McHugh* (1955), 98 Ohio App. 393, 400–401, 57 O.O. 441, 444–445, 129 N.E.2d 848, 852–853; *Laymon v. Bennett* (1944), 75 Ohio App. 233, 238–239, 30 O.O. 581, 583–584, 61 N.E.2d 624, 626–627.

In the context of wills, Ohio courts have generally held an individual's influence is undue when it restrains a testator from disposing of property in accordance with the testator's own wishes and judgments and substitutes the wishes or judgments of another. *Rich v. Quinn* (1983), 13 Ohio App.3d 102, 103, 13 OBR 119, 120–121, 468 N.E.2d 365, 367–368. The undue influence must so overpower and subjugate the mind of the testator as to destroy the testator's free agency and make the testator express another's will rather than his or her own. *West v. Henry* (1962), 173 Ohio St. 498, 501, 20 O.O.2d 119, 121, 184 N.E.2d 200, 202; *Rich, supra*, 13 Ohio App.3d at 103, 13 OBR at 120–121, 468 N.E.2d at 367–368.

"The mere existence of undue influence, or an opportunity to exercise it, although coupled with an interest or motive to do so, is not sufficient, but such influence must be actually exerted on the mind of the testator with respect to the execution of the will in question. It must be shown that such influence, whether exerted at the time of the making of the will or prior thereto, was operative at the time of its execution or was directly connected therewith. It must be shown that undue influence was exercised with the object of procuring a will in favor of particular parties." (Emphasis omitted.) *West, supra*, 173 Ohio St. at 501, 20 O.O.2d at 121, 184 N.E.2d at 202.

In order to sustain an allegation of undue influence, a plaintiff must prove: (1) that the testator was "susceptible"; (2) that another person had the opportunity to exert the influence; (3) that improper influence was exerted or attempted; and (4) that the influence had the desired effect. *Id.* at 510–511, 20 O.O.2d at 125–126, 184 N.E.2d at 207–208; *Rich, supra*, 13 Ohio App.3d at 103, 13 OBR at 120–121, 468 N.E.2d at 367–368.

■ In an affidavit filed in support of her memorandum contra to defendant's motion to summary judgment, appellant stated that "[w]hen I did sign the deeds, which ultimately transferred my real estate, I did so at the direction, insistence, influence and guidance of my grandson, John R. Henkle." The trial court concluded that this statement constituted "the sum total of [appellant's] evidence asserted to resist the motion for summary judgment as to the issue of duress or undue influence. Should the court permit cancellation of a deed because of 'the direction, insistence, influence and guidance,' of the grantee, few deeds could withstand the test." We agree. "As all persons * * * are 'influenced' by the affectations and persuasions of family, friends, moral and spiritual advisors and a host of others, such environmental influences cannot all be 'undue.'" *Rich, supra*, 13 Ohio App.3d at 103, 13 OBR at 120–121, 468 N.E.2d at 367–368. Nothing in the record supports the inference that John Henkle exerted such influence over appellant that her will was overborne. To the contrary, in her deposition, when asked if she relied upon

the advice of her attorney in making the conveyance to her grandson, she replied, "I don't think so. I decided on my own. I have had a mind of my own a long time. * * *"

We find no issue of material fact. Reasonable minds could come to but one conclusion—that the conveyance was not the result of undue influence. Appellees were entitled to judgment as a matter of law and the trial court did not err in granting summary judgment to appellees on the undue influence claim.

Appellant's second claim for relief was based on mistake. She alleged that she "transferred the real estate * * * under the belief that if she signed and executed the deeds and documents effecting said transfer, the property known as the Henkle Farm would remain an asset of the Henkle family * * *." She alleged that John Henkle represented to her that the transfer of real estate would "effect her intent, desire and stated purpose to have the Henkle Farm remain within the Henkle family * * *."

In order to maintain an action for reformation of a deed on the ground of mistake, the plaintiff bears the burden to prove a mutual mistake occurred by clear and convincing evidence. *Frate v. Rimenik* (1926), 115 Ohio St. 11, 152 N.E. 14, paragraph one of the syllabus; *Castle v. Daniels* (1984), 16 Ohio App.3d 209, 210, 16 OBR 224, 225–226, 475 N.E.2d 149, 150–151. Appellant has not alleged a mutual mistake as contemplated by the law, but rather has alleged a unilateral mistake. She stated in her deposition she made a mistake by not reading the deed, and by not getting the conditions under which she conveyed the property to John Henkle in writing. Ordinarily, persons of full age in possession of their faculties who sign an instrument and remain "acquiescent to its operative facts for sometime" cannot escape its consequences by alleging that they did not read it or that they relied upon the representations of another as to its contents or significance. *Flynn, supra,* 98 Ohio App. at 402, 57 O.O. at 445, 129 N.E.2d at 853–854; *Runyan v. Maloney* (Nov. 16, 1981), Clermont App. No. 906, unreported, at 6–7, 1981 WL 5258.

We find no issue of material fact. Reasonable minds can reach but one conclusion—that appellant's mistake was unilateral and did not justify the relief she sought. Accordingly, appellees were entitled to judgment as a matter of law and the trial court did not err in granting summary judgment in favor of appellees on appellant's second claim for relief.

In her third claim for relief, appellant alleged that there was a constructive trust. She claimed that she conveyed the property to John Henkle "out of his insistence and upon his representation that the property would remain within

the Henkle family and that it would timely and ultimately be equally distributed and reconveyed equally among [appellant's] children, grandchildren and great-grandchildren." She further claimed that she would not have executed and delivered the deed without John Henkle's unconditional assurances that the Henkle farm would remain exclusively within the Henkle family.

In her fourth claim of relief, appellant alleged unjust enrichment. She claimed that during his lifetime John Henkle failed to pay her the fair and reasonable value of the real property transferred to him and, as a result, appellees, as the statutory beneficiaries of his estate, have been unjustly enriched at appellant's expense.

The Ohio Supreme Court discussed constructive trusts in *Ferguson v. Owens* (1984), 9 Ohio St.3d 223, 9 OBR 565, 459 N.E.2d 1293, in which it stated:

"'* * * A constructive trust is defined in 76 American Jurisprudence 2d (1975) 446, Trusts, Section 221, as:

"'"* * * [A] trust by operation of law which arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. It is raised by equity to satisfy the demands of justice. * * *'

"In *Beatty v. Guggenheim Exploration Co.* (1919), 225 N.Y. 380, 122 N.E. 378, we find the following pertinent commentary by Justice Cardozo, at pages 386 and 389 [122 N.E. at 380, 381]:

"'"* * * A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee. * * * A court of equity in decreeing a constructive trust is bound by no unyielding formula.'" *Ferguson, supra,* 9 Ohio St.3d at 225–226, 9 OBR at 567, 459 N.E.2d at 1295.

Although a constructive trust is usually invoked when property has been acquired by fraud, it may also be imposed where it is inequitable that a person retain the property even if it was acquired without fraud. *Id.* at 226, 9 OBR at 567–568, 459 N.E.2d at 1295–1296; *American Diabetes Assn., Inc. v. Diabetes Soc. of Clinton Cty.* (1986), 31 Ohio App.3d 136, 141, 31 OBR 224, 229, 509 N.E.2d 84, 89–90. A constructive trust is an appropriate remedy for unjust enrichment. *Ferguson, supra,* 9 Ohio St.3d at 226, 9 OBR at 567–568, 459 N.E.2d at 1295–1296. The doctrine of unjust enrichment states that a

person shall not be allowed to profit or enrich himself inequitably at another person's expense. *Freedline v. Cielensky* (1961), 115 Ohio App. 138, 142, 20 O.O.2d 238, 240–241, 184 N.E.2d 433, 436–437.

In order for a constructive trust to be imposed, the conduct of the parties must give rise to the exercise of equitable jurisdiction. *Croston v. Croston* (1969), 18 Ohio App.2d 159, 163, 47 O.O.2d 260, 262, 247 N.E.2d 765, 768. "* * * 'While it is said that a defendant is liable if "equity and good conscience" requires [*sic*], this does not mean that a moral duty meets the demand of equity. There must be some specific legal principle or situation which equity has established or recognized, to bring a case within the scope of the doctrine.'" (Emphasis omitted.) *Id.* at 163–164, 47 O.O.2d at 262–263, 247 N.E.2d at 768–769, quoting *American Univ. v. Forbes* (1936), 88 N.H. 17, 183 A. 860. Essentially, a constructive trust will be imposed where there is some ground such as fraud, duress, undue influence or mistake upon which equity will grant relief. *Croston, supra,* 18 Ohio App.2d at 164, 47 O.O.2d at 262–263, 247 N.E.2d at 768–769.

Construing the material supporting and opposing summary judgment in appellant's favor, the record shows only that appellant conveyed the property to John Henkle with the understanding that at some unspecified time in the future he would give his three brothers home sites on the farm. Appellant indicated that she believed that John would convey these tracts of unspecified description to his brothers and that John was to have the rest of the farm. She did not object when John did not make the conveyances to appellant's other grandchildren prior to his death because "they didn't want it." The record does not support the assertion that John Henkle made any sort of misrepresentation, but rather that he died before he could fulfill his promises because the intended beneficiaries did not want the land. Appellant has shown no basis in equity for which she was entitled for relief. Instead, it is clear that appellant made a gift to John Henkle, and that neither he nor his beneficiaries were unjustly enriched at her expense. Consequently, there are no grounds for the operation of a constructive trust.

We find no issue of material fact. Reasonable minds could come to but one conclusion—that appellees were not unjustly enriched at appellant's expense, and that the transfer of land from appellant to John Henkle was a gift. Appellees were entitled to judgment as a matter of law and the trial court did not err in granting summary judgment to appellees on appellant's third and fourth claims for relief.

We conclude that the trial court did not err in granting summary judgment to appellees on each of appellant's four claims for relief. We overrule appellant's sole assignment of error and affirm the trial court's judgment.

*Judgment affirmed.*

WALSH, J., concurs.

JONES, P.J., concurs separately.

JONES, Presiding Judge, concurring separately.

I agree that the summary judgment granted to appellees on appellant's four claims for relief should be affirmed. I write separately, however, to express the reasons why such judgment should be affirmed even though the deed in question was neither executed nor acknowledged as required by law.

R.C. 5301.01 provides that:

"A deed * * * must be signed by the grantor * * * and such signing must be acknowledged by the grantor * * * in the presence of two witnesses, who shall attest the signing and subscribe their names to the attestation. Such signing must be acknowledged by the grantor * * * before a * * * notary public * * * who shall certify the acknowledgment and subscribe his name to the certificate of such acknowledgment."

Appellant's initial complaint included the four claims for relief discussed in the majority opinion. Appellant later filed an amended complaint to add a fifth cause of action claiming "improper acknowledgment and execution" of the deed. In ruling on appellees' summary judgment motion, the trial court found that "[appellant] signed the deed in [the grandson's] presence, but not in the presence of the witnesses whose names appear on the deed." Thus, the trial court found that the deed was a defectively executed instrument. Consequently, the instrument is not entitled to be recorded. See *State ex rel. Puthoff v. Cullen* (1966), 5 Ohio App.2d 13, 34 O.O.2d 61, 213 N.E.2d 201. Given this lack of compliance with R.C. 5301.01, I believe it is incumbent upon us to explain why we are approving a conveyance in which the deed was improperly executed.

Although it found that the deed was not properly witnessed, the trial court failed to rule on appellant's improper acknowledgment and execution claim in granting summary judgment to appellees. Consequently, we dismissed an earlier appeal because this claim was still pending and the trial court's judgment entry lacked the requisite Civ.R. 54(B) language. Oddly enough, appellant voluntarily dismissed her improper execution and acknowledgment claim after we remanded the case to the trial court which again granted summary judgment to appellees. Having now voluntarily dismissed the fifth cause of action, appellant surrendered her claim that the deed is invalid due to lack of proper acknowledgment and execution. It is also significant that appellant would challenge the deed to her grandson on these grounds, while at the same time she did not attempt to set aside the conveyance of 1.7 acres to

her son, Robert, which deed was executed simultaneously to the one challenged herein.

Since appellant voluntarily dismissed her fifth cause of action, I therefore concur with the decision to affirm the summary judgment granted to appellees, notwithstanding the deed's lack of proper execution and acknowledgment.