[Cite as *Berry v. Bowling*, 2019-Ohio-898.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

PATRICIA L. BERRY,                          :

                            :          Case No. 18CA1068

      Plaintiff-Appellee,                  :

                            :

      vs.                                  :          DECISION AND JUDGMENT
                            :          ENTRY

RONALD D. BOWLING, ET AL.,                  :

                            :

      Defendants-Appellants.               :          **Released: 03/11/19**

---

APPEARANCES:

David E. Grimes, West Union, Ohio, for Appellants.

Dana N. Whalen, West Union, Ohio, for Appellee.

---

McFarland, J.

{¶1} Ronald D. Bowling and Janeile Bowling appeal the June 18, 2018 judgment entry of the Adams County Common Pleas Court. In the judgment entry, which granted permanent easement, Appellants challenge various findings and orders of the court.

{¶2} Having reviewed the record, we affirm the trial court's decision. Accordingly, we find no merit to Appellants' assignments of error and all are hereby overruled.

FACTS

{¶3}  The following facts are contained in the record.  Dean and Sandra Purnhagen were the owners of real estate in Meigs Township in Adams County. There is a gravel road from S.R. 781 to what was once their residence.  An unnamed tributary of Turkey Creek flows through the Purnhagen property.

{¶4}  In 1992, Appellants entered into a land installment contract with the Purnhagens to purchase a portion of Purnhagens' property which is subject of this action.  Appellants' land contract is Joint Exhibit 2.  The land contract contains a written legal description of the property, including a thirty-foot wide easement for ingress/egress that was reserved by the Purnhagens along the existing gravel road. This easement was required to keep the Purnhagens from being landlocked. Therefore, the Purnhagens held the dominant property and Appellants, as purchasers, held the servient estate.  Through the land contract's description, Appellants had notice of the easement along the gravel road.

{¶5}  In 1995, Mrs. Purnhagen executed a deed, Joint Exhibit 1, to Appellee for her property which is also subject of this action.  Appellee is the current owner of the dominant property.

{¶6}  The parties' properties have been surveyed several times.  Gerald Wallingford prepared a survey in 1992, and a plat was prepared from Mr. Wallingford's survey.  In 1993, Robert Sattefrield prepared a survey.  In 2012,

McCarty and Associates prepared a survey. The surveys subsequent to Mr. Wallingford's 1992 survey all contained the same legal description of the easement, also subject of this appeal.

{¶7} Various issues with regard to the easement arose between the parties. Appellee asserts that Appellants were parking vehicles within the easement. It was also alleged that debris had been placed on the roadway. The gravel road had narrowed due to erosion of the creek bank. The parties blame each other for the erosion of the creek bank. It was also asserted that there was a risk of danger for vehicles traveling the easement.

{¶8} On January 19, 2012, Appellee filed a Complaint for Injunction. On February 7, 2012, the matter came before the trial court on Appellee's Motion for Preliminary Injunction which the court subsequently granted. On March 1, 2012, Appellants filed an Answer and Counterclaim. On September 10, 2012, Appellants filed an Amended Counterclaim.

{¶9} The matter eventually proceeded to a bench trial which took place on February 7 and 8, 2013 and on September 3, 2013. On the first day, Appellee testified, along with her companion Al Mitchum, about the difficulties they had experienced with the neighbors and the use of the easement. David Osborne, a construction contractor, testified about flooding in the area during recent years and its effect on the subject properties. He also testified about his installation of a

culvert in the creek in 2010 on behalf of Appellee.  Brenda Osborne, his wife, also testified about flooding in the area, debris she saw on the gravel roadway, and difficulties her workers had passing Appellants' part of the property in order to access Appellee's property.

{¶10}  Also on February 7, 2013, Mr. Wallingford testified that his initial survey drawing in 1992 depicting the easement was incorrect due to improper calculation.  He explained that the day prior to trial, he went to the property again and returned to the office and reviewed his notes. The original metes and bounds of the easement were correct.  However, the bearing calculated in 1992 was incorrect, resulting in an incorrect legal description and an incorrect plat in 1992.

{¶11}  Once he discovered the mistake, Mr. Wallingford spent the rest of that day revising the plat and legal description and received approval at the tax map office.  The significance of the mistake was that the easement originally depicted did not follow the existing gravel road, but instead passed into the creek in the northern portion of the property.  Mr. Wallingford prepared a corrected survey which resulted in the easement following the existing gravel road.  This survey is designated as Plaintiff's Exhibit 31.[1]

{¶12}  Appellants' counsel objected to presentation of Exhibit 31.  Counsel explained that for at least six months he had maintained that there was something

---

[1] Subsequent surveys by Robert Satterfield in 1993 and by McCarty and Associates in 2012 contained the same erroneous depiction of the easement.

wrong with the easement as it appeared to go into the creek. Counsel acknowledged that the information was newly discovered to Appellee's counsel as well, but asserted that Appellants were possibly prejudiced because he would have to change trial strategy. The court decided to reserve ruling on the admissibility of the exhibit.

{¶13} Mr. Wallingford's testimony continued but he admitted uncertainty about whether he could say the existing gravel roadway was within the easement. He was dismissed to return to the property for further measurements and calculations. On the second day of trial, Mr. Wallingford testified the existing gravel roadway was within the thirty-foot easement. When Appellee rested, Appellants counsel continued the objection to Exhibit 31 but his objection was overruled.

{¶14} On the second and third days of trial, Appellants Mr. and Mrs. Bowling testified, along with Michael McCarty, a surveyor retained on their behalf. Mr. McCarty agreed in his testimony that the easement as previously shown on the 1992 survey and plat was incorrect.

{¶15} There was also testimony about two significant flood events involving the properties owned by Appellants and Appellee. In both 1997 and in 2010 there were two rain events within a period of days which caused significant

flooding. There was no expert testimony at trial as to the severity of the events, and the testimony was inconsistent as to exact dates.

{¶16} David Osborne, a neighboring property owner, testified he installed a new 60-inch culvert for Appellee to replace a previous culvert, fixed holes where the gravel had "washed out," and lined the creek bed with large rocks to slow the water down near Appellee's house. Mrs. Osborne, who assisted in his work, testified her workers had difficulty getting equipment up the roadway past Appellants' home, specifically near the former location of a bridge. She testified there was debris, consisting of wood and rocks, on the roadway. Mrs. Osborne indicated her belief that the debris was placed there by Mr. Bowling.

{¶17} The evidence at trial further demonstrated that there had been multiple bridges and culverts installed between the gravel road and Appellants' residence. The photographic exhibits at trial demonstrated that the creek erosion was presently encroaching into the easement. There was conflicting testimony regarding the effects of logging trucks on the road.

{¶18} On June 8, 2018, the trial court issued its Judgment Entry. Without explicitly stating as such, the trial court granted a permanent injunction to Appellee. Pertinent to this appeal, the 13-page entry also contained the following orders:

1. "Plaintiff and Defendant shall take necessary steps to update any legal descriptions, deeds, plats, or other documents that relied upon the

incorrect 1992 survey to reflect the corrected survey as set forth in Plaintiff's Exhibit 31 with regards to the easement.  Each party shall be responsible for their own costs to correct their own legal documents.  If the signature of the other party is necessary to accomplish the correction, they shall do so within 30 days of being notified that their signature is necessary."

* * *

5. "Within a reasonable period of time from the issuance of this decision, Plaintiff and Defendant shall share equally in the cost of repairing the creek bed bank area as shown in Plaintiff's Exhibit 18, 20 and other exhibits wo that the creek bank is restored to a condition where it will not encroach upon the easement (as shown in Exhibit 31)."

{¶19}  Also, pertinent to this appeal, the trial court made the following findings of Fact at page 5:

"There were two significant flood events involving both properties. In both 1997 and 2010 there were two rain events within a period of days that caused significant flooding.  There was no expert testimony as to whether these events could be considered twenty-five, fifty, or one hundred-year floods.  Testimony was inconsistent as to the exact dates, but fairly consistent regarding the severity of the events. * * * Despite his denials, the Court finds that Mr. Bowling likely placed the debris and other materials in the roadway within the easement.  Of significance is his failure to provide an explanation for how the debris was placed on top of the freshly graded road after the 2010 flood. * * * There was no credible testimony or evidence that the erosion to the creek or damage to the bridge was caused by the culvert or any specific action of the Plaintiff.  The erosion of the creek was as likely to be caused by the actions of Mr. Bowling as anything else."
The trial court also made these observations and orders at Page 9:

"The Defendant sought various orders, including, * * *.  For an order prohibiting Plaintiff from diverting water onto the easement, waterway, and/or Defendant's property; Defendant failed to establish that Plaintiff diverted any surface water or that any diversion

accelerated the water causing damage to the servient estate. Based upon the facts and testimony the request for order shall be denied."

Also,

"There was some testimony during trial that Mr. Bowling that that Mrs. Berry was 'trespassing' on his land due to the 'legal' easement that went through the creek. Based upon the new survey depicted in Exhibit 31. Ms. Berry would not be traveling on Mr. Bowling's property by utilizing the gravel driveway."

{¶20} This timely appeal followed.

## ASSIGNMENTS OF ERROR

"I. THE TRIAL COURT ERRED IN ORDERING THE PARTIES TO UPDATE THE LEGAL DESCRIPTION IN THEIR DEEDS TO REFLECT THE CORRECTED SURVEY.

II. THE TRIAL COURT ERRED IN ORDERING THE PARTIES TO EQUALLY SHARE IN THE EXPENSES OF CLEARING, MAINTAINING, AND IMPROVING THE EASEMENT.

III. THE TRIAL COURT ERRED IN NOT FINDING PLAINTIFF CAUSED FLOODING TO DEFENDANTS' PROPERTY.

IV. THE TRIAL COURT ERRED IN NOT FINDING PLAINTIFF TRESPASSED ON DEFENDANTS' PROPERTY."

## STANDARD OF REVIEW

{¶21} A party to an easement may invoke the equitable jurisdiction of a court by seeking an injunction to enforce his or her rights pursuant to the easement. *Mays v. Moran,* 4th Dist. Ross Nos. 97CA2385 and 97CA2386, 1991 WL 181400, *9, citing *Murray v. Lyon*, 95 Ohio App.3d 215, 221,642 N.E.2d 41, (9th

Dist.1994). Trial courts retain broad discretion to fashion the terms of an injunction. *Adkins v. Boetcher,* 4th Dist. Ross No. 08CA3060, 2010-Ohio-554, at ¶ 35. (Internal citations omitted.)

**{¶22}** Here, Appellants do not challenge the grant of the permanent injunction. Rather, they challenge various orders and findings relating to the injunction and contained within the appealed from judgment entry.

**{¶23}** Once a party invokes the trial court's equitable jurisdiction, the court possesses discretionary authority to weigh the parties' competing interests and exact an equitable division of their property rights. *Ohio Power Co. v. Bauer,* 60 Ohio App.3d 57, 59-60, 573 N.E.2d 780 (5th Dist.1989). A determination rendered pursuant to the court's equity jurisdiction will not be reversed absent an abuse of discretion. *Southers v. Rapp* 4th Dist. Ross No. 97CA2296, 1998 WL 100409, (Mar. 4, 1998). A finding that a trial court abused its discretion implies that the court acted unreasonably, arbitrarily, or unconscionably. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court. *Berk v. Matthews*, 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990). We are mindful, however, that no court has the authority, within its discretion, to commit an error of law. *State v. Landrum,* 4th Dist. Ross No. 17CA3607, 2018-Ohio-1280, at ¶ 10; *State v. Boone,* 2017-Ohio-843, 85 N.E.3d 1227, (10th Dist.), ¶ 9, citing

*State v. Moncrief,* 10th Dist. No. 13AP-391, 2013-Ohio-4571, ¶ 7. *See also 2–J Supply Co. Inc. V. Garrett & Parker, LLC,* 4th Dist. Highland No. 13CA29, 2015-Ohio-2757, ¶ 9.

LEGAL ANALYSIS

ASSIGNMENT OF ERROR ONE

**{¶24}** Appellants assert the trial court erred in ordering the parties to update the legal description in their deeds to reflect Wallingford's corrected survey. Within this assignment of error, they raise the issue of whether the easement in this case is an expressed easement or is it an easement implied by necessity. Essentially, the court's order to correct and update the legal descriptions in the parties' deeds, plats, or other documents is an order for reformation of instruments.

**{¶25}** Equity allows reformation of a written instrument when, due to a mutual mistake on the part of the original parties to the instrument, the instrument does not evince the parties' actual intention. *Patton v. Ditmyer*, 4th Dist. Athens No. 05CA12, 05CA21, and 05CA22, 2006-Ohio-7107, at ¶ 27. *See Mason v. Swartz*, 76 Ohio App.3d 43, 50, 600 N.E.2d 1121 (1991). "The purpose of reformation is to cause an instrument to express the intent of the parties as to the contents thereof * * *." *Delfino v. Paul Davies Chevrolet, Inc.*, 2 Ohio St.2d 282, 286, 209 N.E.2d 194, (1965). "[R]eformation of a contract is appropriate where the written agreement does not accurately reflect the true understanding of the

parties, and it is used to effectuate their true intent." *Concrete Wall Co. v. Brook Park* 8th Dist. Cuyahoga Nos. 34054, 34090, 34171, (Feb. 26, 1976), at *3, citing *Greenfield v. Aetna Cas. Ins. Co.,* 75 Ohio App. 122, 61 N.E.2d 226 (1944).  "The purpose of reformation is not to make a new agreement but to give effect to the one actually made by the parties, which is not accurately reflected in the written agreement." *Concrete Wall Co, supra,* at *3.

{¶26}  A person seeking reformation of a written instrument must prove by clear and convincing evidence that the mistake regarding the instrument was mutual. *Patton, supra,* at ¶ 28. *See Stewart v. Gordon*, 60 Ohio St. 170, 53 N.E. 797 (1899), paragraph one of the syllabus; *Justarr Corp. v. Buckeye Union Ins. Co.*, 102 Ohio App.3d 222, 225, 656 N.E.2d 1345 (1995).  A "mutual mistake" means " 'a common mistake by all the parties to the contract.' " *Lukacevic v. Daniels,* 8th Dist. Cuyahoga No. CV-16-89484, 2019-Ohio-102, at ¶ 23, quoting *Wells Fargo Bank Minnesota v. Mowery,* 187 Ohio App.3d 268, 2010-Ohio-1650, 931 N.E.2d 1121, ¶ 24 (4th Dist.2010), quoting *Huber v. Knock,* 1st Dist. Hamilton No. C-080071, 2008-Ohio-5900, at ¶ 6.  Clear and convincing evidence is the degree of evidence necessary to elicit in the mind of the trier of fact a firm belief or conviction as to the allegations to be established. *See In re Haynes,* 25 Ohio St.3d 101, 104, 495 N.E.2d 23 (1986).

**{¶27}**  Because reformation, at its core, is an equitable remedy, "[i]ts application thus 'depends upon the facts and circumstances of each case * * *.' "*ABN AMRO [Mtge.] Group, Inc. v. Kangah,* 126 Ohio St.3d 425, 2010-Ohio-3779, 934 N.E.2d 924, ¶ 11. (Internal citations omitted.)  Therefore, the concept of negligence in the reformation context is "far from being a static concept subject to mechanical application, [but rather] is one that requires careful consideration of the facts to determine if the party seeking reformation of a deed is, both in light of personal action taken and as a matter of equity, entitled to such relief." 27 Williston on Contracts, Section 70:49.  Courts should carefully consider the unique equities of each situation when determining whether a party is entitled to have a written instrument reformed. *Natl. City Real Estate Servs., L.L.C. v. Frazier,* 2018-Ohio-982, 96 N.E.3d 311, ¶ 32 (4th Dist.).

**{¶28}**  Case law reflects that the legal description contained in a deed is subject to reformation. *Foley v. Lipka,* 4th Dist. Highland No. 673, 1988 WL 118701, (Nov. 3, 1988), at *3; *Davis v. Cassady,* 4th Dist. Ross No. 1303, 1987 WL 8438, (Mar. 23, 1987) at *2*; Clayton v. Freet*, 10 Ohio St. 544, 1860 WL 13, paragraph one of the syllabus.

**{¶29}**  We pause to acknowledge that neither Appellee nor Appellants raised issues of reformation or mutual mistake in the pleadings.  And, the parties never moved to amend the pleadings to conform to the evidence adduced at trial.

However, the court has the ability to sua sponte consider an unpleaded issue so long as the decision to do so complies with Civ.R. 15(B). *Textiles, Inc. v. Design Wise, Inc.,* 12th Dist. Madison Nos. CA2009-08-015 and CA2009-08-018, 2010-Ohio-1524, at ¶ 17; *Hogan v. Hogan,* 12th Dist. Warren Nos. CA2007-12-137, CA2007-12-141, 2008-Ohio-6571 (affirming sua sponte recognition of mutual mistake because the affirmative defense was fully litigated, although never included in the pleadings).

{¶30} Here, the record reflects that the issue was litigated without objection.[2] While Appellants objected to admission of Plaintiff's Exhibit 31, the corrected survey, and the court reserved ruling on the issue, counsel had the ability to cross-examine Mr. Wallingford about his correction. The three-day trial began on February 7 and 8, 2013. The defense's case was continued into a third day which did not occur until approximately 7 months later in September, 2013, when Appellants' introduced the testimony of their own expert surveyor, Mr. McCarty. Based on the above, it appears Appellants had the fair opportunity to address any issues of reformation or mutual mistake.

---

[2] "Under Civ.R 15(B), implied consent is not established merely because evidence bearing directly on an unpleaded issue was introduced without objection; it must appear that the parties understood the evidence was aimed at the unpleaded issues. * * * Various factors to be considered in determining whether the parties impliedly consented to litigate an issue include: whether they recognized that an unpleaded issue entered the case; whether the opposing party had a fair opportunity to address the tendered issue or would offer additional evidence if the case were to be tried on a different theory; and, whether the witnesses were subjected to extensive cross-examination on the issue." *Textiles, Inc.,* at ¶ 18, quoting *State ex rel. Evans v. Bainbridge Twp. Trustees*, 5 Ohio St.3d 41, 448 N.E.2d 1159, (1983), paragraphs one and two of the syllabus.

{¶31} Turning to consideration of Appellants' argument against reformation of the instruments in this matter, we look to an older Fourth District case. In *Foley v. Lipka, supra,* Foley, the appellee, was executrix and sole devisee of an estate in Highland County. In 1986, Foley filed an action to reform the title to certain real estate she had inherited, (real estate known as the "Van Horn property"), averring that her deed contained an erroneous description of the property as the result of the mutual mistake of the original parties to the deed and asserting a claim for adverse possession. The Lipkas denied her claim for adverse possession and further denied that the deed in issue contained an erroneous description of the property as the result of the mutual mistake of the original parties to the deed. The gist of the parties' dispute was not the amount of property Foley was entitled to have but rather the location of the property lines.

{¶32} At trial, a professional surveyor testified that he had performed a mortgage loan inspection of the Van Horn property in 1985 and in the course of doing so, had discovered a discrepancy between the description of the property in the deed and the property in the possession of the Van Horns. The surveyor testified it was possible that "the surveyor took the property out of the wrong tract since there were no tax maps available in Highland County in 1958." The surveyor further testified that it was obvious that the survey matched up with a 1958 survey "fairly well" except for the erroneous description. The trial court concluded that

Foley was entitled to reformation of the deed to reflect the clear intent of the parties. The court ordered a reformation of the deed to reflect the proper description.

{¶33} On appeal, Lipkas asserted that Foley failed to prove by clear and convincing evidence that the land described in the Van Horn deed was the result of a mutual mistake by the original parties to the instrument. However, our court noted that the testimony at trial, the course of dealing between the parties, and the conduct of the parties supported by clear and convincing evidence the finding by the court that a mutual mistake occurred in the original conveyance in 1948. We also emphasized the testimony of the expert witness, the surveyor, who testified that the discrepancy was a mistake common to surveys at that time due to the lack of tax maps.

{¶34} In *Castle v. Daniels,* 16 Ohio App.3d 209, 475 N.E.2d 149, (2nd Dist.1984), the court concluded that reformation of the deed was appropriate when the evidence showed that the parties were mutually mistaken as to the property conveyed. In *Castle*, the appellees conveyed a lot to the appellants by warranty deed. The deed described the property conveyed as the entire lot, which included a hay field in the northeast corner of the lot upon which sat a barn. The appellees asserted that the parties did not intend the real estate transaction to include the hay field and barn. The deed also described property that was owned by a third party,

Lucy McClung. The appellants conceded that the parties did not intend her property to be part of the transaction.

{¶35} The record included a survey plat which showed that the hay field and barn were not part of the lot, and neither was McClung's property. Testimony existed that the appellants were aware of the lot boundaries. The appellees stated that they showed the appellants the boundaries before closing the real estate transaction.

{¶36} The appellate court affirmed the trial court's judgment reforming the deed based upon mutual mistake. The appellate court observed that the evidence showed that the parties were mutually mistaken as to the land that the deed conveyed. The court also recognized that the appellants disputed that a mutual mistake occurred, but stated at ¶ 32:

> " '[T]he mere fact that the parties at the time of trial testify differently as to what their agreement was does not necessarily mean that there was no agreement between them, nor does it necessarily mean that they were not mutually mistaken concerning the expression of their agreement in the instrument; in this respect, it has been pointed out that if the fact alone that the parties testify differently at the trial would prevent a finding that there was an agreement between the parties, a court could never determine whether there was a contract in a lawsuit where the parties disagree and testify differently.' 13 Ohio Jurisprudence 3d (1979) 363, Cancellation, etc. of Instruments, Section 76." *Id.* at 212.

{¶37} In this case, Appellants also dispute that a mutual mistake occurred. We disagree. The court's decision noted as follows: "Despite the Defendant's

interrogatory response that he did not learn of the error in the survey drawing until 2010, his testimony indicated that he learned about the error in 1997, yet took no action to correct it." It is obvious that both parties relied on an erroneous description in the documents they executed with Mrs. Purnhagen. Appellants were mistaken about the error in the survey drawing at the time they entered the land contract in 1992 and it is also obvious Appellee, who received a general warranty deed from Mrs. Purnhagen in 1995, only learned about the erroneous description during the course of the litigation which ensued in 2012.

{¶38} The trial court found:

"Because the original metes and bounds were correct, and the updated survey merely reflects the correction of an error, there is no requirement to determine whether an implied easement exists. The width and location of the easement remain 30'wide along the existing roadway as originally described, and the Defendant was on notice therefore of the actual location and width of the easement. It is equitable to all concerned to correct such errors."

{¶39} Contrary to Appellants' assertion, the trial court did not err in ordering reformation of the parties' documents with regard to the incorrect 1992 legal description of the easement. It is the function of the trial court to assess the credibility of the various witnesses and not the function of a reviewing court to substitute its judgment in that respect. *Castle, supra,* at p. 212. We have reviewed the record in its entirety, which consisted of three large volumes of testimony and approximately 42 photographic and documentary exhibits.

{¶40} We agree with the trial court's decision that found clear and convincing evidence to support reformation of the parties' deeds, plats, or other documents that rely upon the incorrect 1992 survey to reflect the corrected survey as set forth in Plaintiff's Exhibit 31 with regards to the easement.  It is axiomatic in Ohio that judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of evidence. *Foley, supra,* at \*4; *C.E. Morris Co. v. Foley Construction Co.*, 54 Ohio St.2d 279 (1978); *Burr v. Stark Cty. Bd. of Commrs.,* 23 Ohio St.3d 69 (1986); *State Auto Mut. Ins. Co. v. Cawley*, 33 Ohio App.3d 160 (1986).

{¶41} Based on the foregoing, we find no merit to Appellants' first assignment of error and it is hereby overruled.

ASSIGNMENT OF ERROR TWO

{¶42} Appellants assert the trial court erred in ordering the parties to equally share in the expenses of clearing, maintaining, and improving the easement.  The trial court ordered as follows:

> "There was testimony that the parties had previously shared in the expenses of maintaining the easement.  The Court has found that the actions of the Defendant are also a cause of the erosion.  Therefore, it would be equitable that both parties share in the cost of repairing the creek bank in a manner as set forth in Plaintiff's Exhibit 30 \* \* \*."

Appellee responds that there is competent, credible evidence of the parties' history of shared maintenance expense and joint use of the easement to support the trial

court's decision.  Appellee points to the testimony of Al Mitchum and Ronald

Bowling.  We agree with Appellee.

{¶43}  In this case, Al Mitchum testified that he saw Appellant Ronald

Bowling using a Bobcat after one of the floods.  Mitchum asked him what he was

doing and his testimony is as follows:

> "I stopped him and asked him what are you doing?  He said he was
> straightening up that uh, fixing that, that he was fixing that, fixing the
> drain, fixing the brook, he was fixing it. * * * I yelled at Mr. Bowling
> uh, I already paid those guys to do that job, please don't do it.
> * * * Mr. Bowling said that well they didn't do a good job and you
> wasted your money * * *."

{¶44}  Mr. Mitchum continued:

> "I just got in my car and left because I don't want to argue with him.
> * * * I give him credit, he has cleaned that mess up pretty much
> so * * *."

{¶45}  Later, Ronald Bowling, while testifying about Plaintiff's

Exhibit 21, explained:

> "This is the debris that was left over from uh, the second 2010 flood.
> * * * I told Al that he needs to clean up his mess * * * and Osborne's
> came in with a Bobcat, my son seen them, and they pushed all of the
> debris over to the creek bank and also in the creek further restricting
> the creek again."

{¶46}  Appellant Bowling further testified as follows:

> "When I bought a plow for my four-wheeler, I went up when I
> scraped my part of the road, I also scraped there's [sic.] so they could
> get out on I think three different occasions."

{¶47}  We agree that this testimony alone reflects the parties' history

of shared maintenance and expense regarding the easement. The trial court had competent credible evidence in support of his decision to order shared expenses in maintenance of the easement and creek bank. As such, Appellants' argument is without merit. We hereby overrule the second assignment of error.

## ASSIGNMENT OF ERROR THREE

{¶48} Appellants assert the trial court erred in not finding that Appellee caused flooding to Appellants' property. Appellants assert that Appellee unlawfully obstructed or impeded the passage of water from the creek thereby causing damage. However, Appellee responds that the trial court had competent, credible evidence to support its determination that Berry did not cause flooding to Bowlings' property. Appellee points to the testimony of various witnesses, among them, Michael McCarty, Appellants' expert.

{¶49} Brenda Osborne testified regarding the May 2010 flooding:

"It was horrendous. I've lived here all my whole life except for about two or three years after I first got married. And in that whole time, I've never seen nothing like it. There were places that I saw water that night I'd never seen water before. And some of our rental homes, there was two of them that got water in them. And where we had put those, if we'd known it flooded like that, or course, you would've never put a home there. And whenever they had, I don't know if they called it the 100-year flood or the 99-year flood whatever. They didn't even get flooded then."

{¶50} Her testimony continued:

Q:    When was that 99-year flood that you're referring to?

A:     I think it was like in 96 or 7, whenever the county had so much water and stuff.  It's been several years back.

Q:    So, this the one in May of 2010 was much worse than the one in 1997?

A:    For us it was in our area.

{¶51}  David Osborne also characterized the 2010 flood as extraordinary in that it was "about 7 inches of rain maybe in a couple of hours. * * * Quite a bit of water."  Osborne was thereafter hired to put in a new culvert and "fill up holes where the gravel washed out."  Osborne also testified he lined the creek bed with large rocks to slow down the flow of water.  Osborne pointed out that Appellee's property was north of Appellants'.  And, Osborne opined that the work he performed at Appellee's property did not alter the flow of water.

{¶52}  Finally, Mr. McCarty, Appellants' expert, testified as follows on cross-examination:

Q:    Does it really matter what's going on upstream, with Mrs. Bowling?

A:    With Mrs. Berry's house?

Q:    Uh, Mrs. Berry House.

A:    Yes.

Q:    Yes sir.

A:    Uh, no, actually Ms. Berry's house is not (inaudible) the Bowling issued. [sic.]

{¶53} McCarty was shown Plaintiff's Exhibit 29. He further testified on cross examination:

Q:    [T]his um, a view of the photo of the driveway going towards the Bowling residence, the creek to the left-hand side of the photo. And this is a photo that was taken after the floods in 2010.

A:    That would be consistent with what I remember of the site.

Q:    Okay. Did the size of the culvert at the Berry property have any impact on what you see in this photo?

A:    Probably not.

{¶54} The trial court's decision stated:

"The Court finds that much of the damage caused by the 1997 and 2010 floods were an act of God. The Court cannot find, based upon the evidence presented, that either the old culvert or the new culvert on the Berry property caused the damage and erosion."

{¶55} Given the above testimony, we find there was competent credible evidence in the record to support the trial court's findings and orders. We find no merit to Appellants' argument that the court failed to find Appellee responsible for the damage to their property. Accordingly, we overrule the third assignment of error.

## ASSIGNMENT OF ERROR FOUR

{¶56} Appellants also argue that the trial court erred in not finding Appellee trespassed on their property. They first assert that Appellee trespassed in effect by diverting water from the creek. They also assert trespass when Appellee was

driving outside the metes and bounds description of the easement. Appellee responds that if the trial court was correct in finding Berry did not cause flooding onto Bowlings' property, then the court was also correct in not finding Berry to have trespassed by diverting water. Further, if the trial court was right in ordering the correction of the easement description to correct the surveyor's error, then Berry did not trespass on Berry's property by traversing over the driveway. As such, the trial court's failing to find Berry to have trespassed in this manner is not in error.

{¶57} Appellee's analysis is correct. Given our resolution of the above assignments of error, we find no merit to Appellants' arguments that the trial court failed to find Appellee trespassed on their property diverting water their direction or by driving on the easement. As such, we overrule the fourth assignment of error and affirm the judgment of the trial court in all respects.

**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellants.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Court of Common Pleas to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, J. & Hess, J.:  Concur in Judgment and Opinion.

For the Court,


BY:  _____
     Matthew W. McFarland, Judge



**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**